*Decisions will be entered under Rule 155.*

HENRY M. BROWN AND BARBARA J. BROWN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12481–81.    Filed February 8, 1982.

*James E. Bell*, for the petitioners.
*Henry B. Miller* and *Robyn R. Jones*, for the respondent.

OPINION

DAWSON, *Judge*: This case is presently before the Court on respondent's motion to dismiss for lack of jurisdiction. The primary issue for decision is whether a notice of deficiency addressed to petitioners at an APO address in New York was addressed to them at an address outside the United States for purposes of section 6213(a).[1] The resolution of this issue will determine whether petitioners were entitled to 150 days or only 90 within which to file their petition with this Court.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect on Jan. 14, 1981, the date on which the notice of deficiency was issued.

Secondary issues for decision are whether the notice of deficiency was mailed to petitioners at their "last known address" in conformity with section 6212(b)(1) and whether respondent timely filed his motion to dismiss under Rule 36(a).[2]

## Facts

Petitioners Henry M. Brown and Barbara J. Brown are husband and wife. They filed a joint Federal income tax return for the calendar year 1978 with the Internal Revenue Service Center at Philadelphia, Pa.

On January 14, 1981, respondent sent petitioners a statutory notice determining a deficiency in their income tax for 1978 in the amount of $11,473.01.[3] The notice was issued by the director of respondent's Office of International Operations in Washington, D.C., and was addressed as follows:

> Mr. Henry M. Brown and
> Mrs. Barbara J. Brown
> MKSAC/KKMAC Box 3354
> APO New York, New York 09615

By letter dated February 15, 1980, petitioner Henry M. Brown had advised the Office of International Operations as follows:

Gentlemen:

Pursuant to your request for additional information dated January 10, 1980, this request was mailed to our permanent address in Oklahoma City, Oklahoma. However, we are still in Saudia Arabia and did not receive this request until February 1st.

Some of the information which you have requested is not presently available which will necessitate our sending the forms to our CPA who has all our tax records. It is quite possible that the requested information will not reach you within the six-week time frame. We will make every effort to expedite this.

> very truly yours,
> /S/Henry M. Brown
> HENRY M. BROWN

hmb/

---

[2] All Rule references are to the Tax Court Rules of Practice and Procedure.

[3] The deficiency is primarily attributable to the disallowance of an exclusion claimed by petitioners for income earned while residing in a camp located in a hardship area (Saudi Arabia). See sec. 911 as amended and in effect for the calendar year 1978.

All future correspondence should be directed to our Saudi Address

Henry M. Brown
MKSAC/KKMC BOX 3354
APO New York, 09615

The letters "MKSAC/KKMC"[4] represent "Morrison-Knudsen Saudi Arabian Consortium, King Khalid Military City." King Khalid Military City is located in the Eastern Province (al-Muntaqa al-Sharqiyah) of Saudi Arabia. The APO number "09615" designates the U.S. military post office located at al-Batin, Saudi Arabia.

On or before February 23, 1981, petitioners received the notice of deficiency. They did not immediately file a petition with this Court but rather contacted the District Director of Internal Revenue in Oklahoma City, Okla. Their letter provided in part as follows:

> There appears to have been sufficient lack of communication in the audit by correspondence of the taxpayers' 1978 tax return, conducted while they were employed in Saudia Arabia, to result in adjustments to taxable income that are unwarranted. The proposed adjustments have resulted in a deficiency adjustment being made and the issuance of a 90 day letter (150 days) in our case which has finally reached us.

Their letter went on to request that their file be transferred to the Oklahoma City District ("our local district") for further consideration and in order to permit them to exercise their administrative appeal rights. It also disclosed an Oklahoma City address and telephone number.

On June 8, 1981, 145 days after the notice of deficiency was sent, petitioners filed their petition with this Court.[5] On the following day, it was served on respondent. Fifty-seven days thereafter, on August 5, 1981, respondent filed his motion to dismiss for lack of jurisdiction.

## Issue 1. Timeliness of Motion To Dismiss

Petitioners raise a preliminary issue concerning the timeliness of respondent's motion to dismiss. Citing Rule 36(a),[6] they

---

[4]Note that the notice of deficiency used the letters "MKSAC/KKMAC." The inclusion of the second "A" was presumably a typographical error.

[5]The postmark date on the envelope in which the petition was mailed was June 3, 1981, the 140th day after the notice was sent.

[6]RULE 36. ANSWER

(a) Time to Answer or Move: The Commissioner shall have 60 days from the date of

contend that his motion should be denied because he failed to file it within 45 days from the date of service of the petition. We disagree.

It is well settled that this Court can proceed in a case only if it has jurisdiction and that either party, or the Court sua sponte, can question jurisdiction at any time. *Shelton v. Commissioner*, 63 T.C. 193, 197–198 (1974); *National Committee to Secure Justice, Etc. v. Commissioner*, 27 T.C. 837, 839 (1957). As we stated in *Wheeler's Peachtree Pharmacy, Inc. v. Commissioner*, 35 T.C. 177, 179 (1960), "questions of jurisdiction are fundamental and whenever it appears that this Court may not have jurisdiction to entertain the proceeding that question must be decided." In other words, Rule 36(a) does not circumscribe respondent's right to question jurisdiction.

## Issue 2. Last Known Address

Petitioners raise another preliminary issue concerning the validity of the notice of deficiency. They contend that respondent failed to mail the notice to them at their "last known address" in conformity with section 6212(b)(1).[7] In this regard, they maintain that their "permanent address" in Oklahoma City was their last known address. Again we disagree.

Neither section 6212 nor the regulation promulgated thereunder[8] defines what constitutes a taxpayer's "last known address." We have defined it as the taxpayer's last permanent address or legal residence known by the Commissioner, or the last known temporary address of a definite duration to which the taxpayer has directed the Commissioner to send all communications during such period. *Weinroth v. Commissioner*, 74 T.C. 430, 435 (1980); *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374 (1974), affd. without published opinion 538 F.2d 334 (9th Cir. 1976). Stated otherwise, it is the address

---

service of the petition within which to file an answer, or 45 days from that date within which to move with respect to the petition. * * *

[7]SEC. 6212. NOTICE OF DEFICIENCY.

(b) ADDRESS FOR NOTICE OF DEFICIENCY.—

(1) INCOME AND GIFT TAXES AND CERTAIN EXCISE TAXES.— * * * notice of a deficiency in respect of a tax imposed by subtitle A, * * * if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A * * * and this chapter [chapter 63, relating to assessment] * * *

[8]Sec. 301.6212–1, Proced. & Admin. Regs.

to which, in light of all the surrounding facts and circumstances, the respondent reasonably believed the taxpayer wished the notice to be sent. *Weinroth v. Commissioner, supra*; *Looper v. Commissioner*, 73 T.C. 690, 696 (1980). The relevant focus is thus on the Commissioner's knowledge rather than on what in fact may have been the taxpayer's actual address in use. *Alta Sierra Vista, Inc. v. Commissioner, supra.*

In reasonably determining a taxpayer's last known address, the Commissioner is entitled to use those documents submitted to him by the taxpayer. See *Stewart v. Commissioner*, 55 T.C. 238, 241 (1970); *Birnie v. Commissioner*, 16 T.C. 861, 862, 863 (1951); cf. *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. at 374–375. A taxpayer who desires to effect a change in his or her address bears the burden of providing the Commissioner with clear and concise notification of the new address. *Weinroth v. Commissioner*, 74 T.C. at 435; *Looper v. Commissioner*, 73 T.C. at 696. Absent such notification, the Commissioner is entitled to rely on the taxpayer's most recent communication relevant to last known address and is under no duty to ascertain whether the taxpayer is still at some temporary address of uncertain duration. *McCormick v. Commissioner*, 55 T.C. 138, 141–142 (1970); see *Lifter v. Commissioner*, 59 T.C. 818, 821 (1973).

In the present case, petitioners expressly requested respondent, by letter dated February 15, 1980, to direct all future correspondence to their Saudi Arabian (APO) address. There is nothing in the record to even remotely suggest that they countermanded their written instruction prior to the date on which respondent sent the notice of deficiency. Under these circumstances, we think respondent acted reasonably and that the deficiency notice was in fact mailed to petitioners at their "last known address."[9] *Weinroth v. Commissioner*, 74 T.C. at 435–436; *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. at 374; *Lifter v. Commissioner*, 59 T.C. at 821.

---

[9]Even if the notice was not mailed to petitioners at their last known address, it would still be valid because they actually received it within sufficient time to timely file a petition with this Court and, pursuant to our holding, *infra*, as to the timeliness of petition issue, did in fact so timely file.

## *Issue 3. Timeliness of Petition*

We come now to the merits of respondent's motion to dismiss. It is clear that this Court's jurisdiction to redetermine a deficiency in income tax depends on the issuance by the Commissioner of a notice of deficiency *and* the timely filing of a petition by the taxpayer. Secs. 6212, 6213, and 7442; Rule 13(a) and (c). Because the timely filing of a petition is a jurisdictional prerequisite, an untimely petition must be dismissed. *Malekzad v. Commissioner*, 76 T.C. 963, 965–966 (1981); see sec. 6213(c).

Section 6213(a) prescribes the period within which a timely petition must be filed. It provides as follows:

Within 90 days, *or 150 days if the notice is addressed to a person outside the United States*, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. * * * [Emphasis added.]

In *Looper v. Commissioner*, 73 T.C. 690, 692–696 (1980), we held that the phrase "outside the United States" modifies both "addressed" and "person." Accordingly, if the deficiency notice in this case was addressed to petitioners outside the United States,[10] then they were entitled to 150 days within which to file their petition.[11]

Respondent contends that petitioners' APO address was not a foreign address and that the deficiency notice mailed to them at that address was not a notice "addressed to a person outside the United States." We disagree.

### *A. Military Postal Service*

The designation "APO" signifies military mail. Accordingly, we begin our analysis with a brief discussion of the Military Postal Service.

---

[10]The term "United States" includes only the States and the District of Columbia. Sec. 7701(a)(9).

[11]Both in his motion to dismiss and in his supporting memorandum, respondent represents that petitioners' counsel advised him that petitioners were present in the United States during all of January 1981, the month in which the deficiency notice was sent. Petitioners have not challenged this representation. Their petition was therefore timely filed only if the 150-day period is applicable.

The Military Postal Service (MPS) is an extension of the U.S. Postal Service (USPS).[12] It is designed to provide postal service to members of the Armed Forces, defense contractors supporting the Armed Forces, and certain others at military, defense, and other strategic installations outside the continental United States where USPS service is not available. Postal services are provided through a host of military post offices (MPO's). Although an MPO is a branch of a civil USPS post office, it is staffed by military personnel and operated by a particular military department. MPO's include APO's (Army and Air Force post offices) and FPO's (Navy and Marine Corps post offices). Each MPO is assigned a 5-digit APO (or FPO) number which serves to identify its location without any geographic description.[13] All MPO's are located outside the continental United States. A few are located in Alaska and Hawaii.

Mail bearing an APO (or FPO) number which is posted with USPS in the United States is dispatched to one of four gateway post offices located in New York, Miami, Seattle, and San Francisco. A gateway post office, or postal concentration center, is a USPS facility at which military mail is concentrated for processing, sorting, and delivery to MPO's outside the continental United States.[14] Military letter mail is given airlift

---

[12]Statutory authority for the Military Postal Service lies in 39 U.S.C. sec. 406 (1976). See also 39 U.S.C. secs. 403(a) (Supp. III, 1979) and 411 (1976); 39 C.F.R. sec. 235.1 (1980). At present, the operation of MPS is governed by the separate regulations of the military departments. See Air Force Department Regulation 182–1; Army Department Regulation 65–1; Navy Department OPNAV Instruction 5112.1B. The Department of Defense is in the process of consolidating managerial authority over military postal matters. DOD Directive No. 4525.6 (May 5, 1980), designates the Secretary of the Army as the single manager of MPS, directs the establishment of the Military Postal Service Agency, and authorizes the publication of a single postal manual for the Department of Defense. To date, that manual, DOD Directive No. 4525.6-M, has only been published in draft form.

Additional information concerning MPS can be found in the most recent (Feb. 21, 1980) Postal Agreement between USPS and DOD, see USPS Publication 38 and Enclosure 4 to DOD Directive No. 4525.6 (May 5, 1980), and in secs. 113.5, 122.8, and 125 of the Domestic Mail Manual (July 7, 1981), incorporated by reference in 39 C.F.R., ch. 1, subch. C, sec. 111.1 (1980).

[13]See DOD Directive No. 4525.6-L (Nov. 30, 1981) for an official directory of world-wide MPO locations. For a less official but more easily obtained directory see USPS Publication 65.

[14]See sec. 452 of the Postal Operations Manual (Apr. 30, 1981) for certain of the procedures incident to domestic handling of military mail in the gateway post offices.

service from the gateway post offices to the MPO's on a space available basis on scheduled United States air carriers.[15] However, whenever adequate service by such carriers is not available, the transportation of such mail by other means may be authorized.[16] Other means include military transport, foreign air carriers, and foreign postal administrations.

From the foregoing, it is evident that the key to an APO (or FPO) address is not the gateway post office but rather the numerically designated MPO. Military mail is neither delivered at or by a gateway post office; rather, it is merely concentrated there for dispatch to an MPO outside the continental United States. It is at the MPO where military mail is actually delivered. In other words, the intended destination of a letter bearing an APO (or FPO) address is the MPO.

In the present case, the notice of deficiency was addressed to petitioners at "APO New York 09615." The particular gateway post office—New York—is, as we have just said, irrelevant to our inquiry. What is relevant is the APO number—09615. Here that number identifies the MPO at al-Batin, Saudi Arabia. Al-Batin, not New York, was the intended destination of the notice of deficiency and the location at which delivery was to be effected. In our view, therefore, the notice was addressed outside the United States for purposes of section 6213(a).

We are cognizant of the fact that mail transmitted between the United States and military post offices is classified as "domestic mail" for postal purposes.[17] That classification is irrelevant, however, for purposes of section 6213(a). We have consistently rejected any mechanical approach to that section (see *Lewy v. Commissioner*, 68 T.C. 779, 782 (1977)), and we will certainly not now interpret it by reference to postal definitions intended for an entirely different purpose.[18]

---

[15]39 U.S.C. secs. 3401(b) (Supp. III, 1979) and 3401(c)(1976).

[16]See generally ch. 7, Air Force Department Regulation 182–1; ch. 10, Army Department Regulation 65–1; and ch. 11, Navy Department OPNAV Instruction 5112.1B.

[17]Sec. 111.2*a.*, Domestic Mail Manual (July 7, 1981).

[18]See secs. 111.2*b.* and 122.83, Domestic Mail Manual (July 7, 1981). Military mail is generally subject to the rates of postage and conditions for domestic, rather than international, mail. Cf. 39 U.S.C. sec. 3401(a) (1976).

The fact that APO (or FPO) mail may be in the custody of U.S. civilian and military personnel throughout its transmission is similarly irrelevant. The relevant inquiry is not the nationality of the carrier but rather the manner in which the notice of deficiency is addressed, i.e., within the United States or outside the United States. Sec. 6213(a); sec. 301.6213–1, Proced. & Admin. Regs. A notice addressed to Baker Island, Guam, Kingman Reef, the Commonwealth of Puerto Rico, American Somoa, the Trust Territory of the Pacific, or any other U.S. territory or possession is certainly addressed outside the United States even though USPS itself actually provides postal service to those territories and possessions.[19]

## B. Congressional Intent

Respondent contends that petitioners are not among those whom Congress intended to benefit from the enactment of the 150-day filing period. We disagree.

Taxpayers originally had only 60 days within which to file petitions with this Court. Sec. 274(a), Revenue Act of 1924, ch. 234, 43 Stat. 297. In 1934, Congress extended the period to 90 days for all taxpayers. Secs. 272(a) and 501, Revenue Act of 1934, ch. 277, 48 Stat. 741, 755–756. Both Committee reports state that "Experience has shown this [60-day period] is not sufficient time * * * in case of taxpayers living a very great distance from Washington." H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 554, 580; S. Rept. 558, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 586, 619. Congress thus recognized that the receipt of mail is often delayed when it travels a great distance, even if just in the United States.

In 1942, Congress again extended the filing period, this time to 150 days in the case of a notice addressed to a taxpayer outside the United States. Sec. 272(a)(1), I.R.C. 1939, as amended by sec. 168(a), Revenue Act of 1942, ch. 619, 56 Stat. 876. The Senate Finance Committee report states that the extension was enacted in order to avoid hardship "In the case of a taxpayer in remote places, such as Hawaii or Alaska, * * * because of delays in transporting mail that may occur

---

[19]The territorial jurisdiction of USPS is defined by 39 U.S.C. sec. 403(a) (Supp. III, 1979). See sec. 111.2a., Domestic Mail Manual (July 7, 1981).

during the present hostilities." S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 618. Once again Congress recognized that the receipt of mail is often delayed when it is addressed to a remote location.

In *Looper v. Commissioner*, 73 T.C. at 694-695, we recognized that the receipt of mail is often delayed when it travels abroad and used that fact to support our holding that the phrase "outside the United States" modifies "addressed" as well as "person." In the present case, the notice of deficiency was addressed overseas and had to travel a great distance. We think this is precisely the situation Congress contemplated in enacting the 150-day filing period.

## C. Policy

Finally, important policy considerations support our view. Prior to 1924, a taxpayer against whom the Commissioner determined a deficiency could not seek judicial review until after the liability had been paid. In 1924, Congress recognized that "The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment." H. Rept. 179, 68th Cong., 1st Sess. (1924), 1939-1 C.B. (Part 2) 241, 246; S. Rept. 398, 68th Cong., 1st Sess. (1924), 1939-1 C.B. (Part 2) 266, 272. Accordingly, it created this Court as a forum in which taxpayers could litigate deficiencies in income taxes "without being required to resort to the cumbersome and inequitable processes of paying the amount in question and suing for its recovery." *Newsom v. Commissioner*, 22 T.C. 225, 227 (1954), affd. per curiam 219 F.2d 444 (5th Cir. 1955). See Revenue Act of 1924, ch. 234, tit. IX, 43 Stat. 336. Consistent with the congressional purpose, we have maintained an "open door" policy insofar as jurisdiction is concerned. As we stated in *Looper v. Commissioner*, 73 T.C. at 695:

Congress has afforded taxpayers a prepayment forum—this Court—in which to contest the Commissioner's asserted deficiency. Consonant therewith, the jurisdiction provisions of the Code have been read in a manner which facilitates rather than impedes access to the Tax Court forum. * * *

See also *Levy v. Commissioner*, 76 T.C. 228, 231 (1981); *Lewy v. Commissioner*, 68 T.C. at 781 ("in response to the expressed intent of Congress to provide a convenient, prepayment

hearing, this Court and the Courts of Appeals have given the jurisdictional provisions a broad, practical construction rather than a narrow, technical meaning"). The result that we reach herein conforms with these policy considerations.

### D. Conclusion

In view of the foregoing, we hold that a notice of deficiency which bears an APO (or FPO) address is addressed outside the United States for purposes of section 6213(a) *if* the military post office designated by the APO number is located outside the United States. In the present case, the notice was addressed to petitioners outside the United States; therefore, they had 150 days within which to file their petition with this Court. Because their petition was timely filed, respondent's motion to dismiss for lack of jurisdiction will be denied.

*An appropriate order will be entered.*