BASDEO BALKISSOON and GLORIA BALKISSOON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Balkissoon v. Commissioner
Docket No. 8401-88.
United States Tax Court
T.C. Memo 1992-223; 1992 Tax Ct. Memo LEXIS 255; 63 T.C.M. (CCH) 2766; April 15, 1992, Filed *255 An order will be issued restoring this case to the general docket for further trial or other disposition. Brett Weiss, for petitioners. [1]
James F. Kearney, for respondent. DAWSON; PAJAK
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge John J. Pajak pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. All section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in and additions to petitioners' Federal income tax as follows: Additions To Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
1980
$ 21,417.00
$ 3,212.40
$ 1,070.85
*256 Respondent also determined that petitioners are liable for increased interest under section 6621(c). At trial, respondent filed a motion for a penalty and costs under section 6673(a)(1) and (2). After concessions, the issues [2] the Court must decide for 1980 are: (1) Whether the statutory period for assessment has expired; (2) whether petitioners are entitled to a $ 38,611.09 loss claimed with respect to their investment in the Upper Cumberland River Mining Program; (3) whether the Upper Cumberland Mining Program was an activity engaged in for profit within the meaning of section 183; (4) whether petitioners are liable for the increased rate of interest attributable to tax-motivated transactions under section 6621(c) with respect to the Upper Cumberland Mining Program; (5) whether petitioners are liable for the addition to tax under section 6653(a); (6) whether respondent's motion for a penalty under section 6673(a)(1) should be granted or denied; and (7) whether respondent's motion for excess costs (against petitioners' former counsel) under section 6673(a)(2) should be granted or denied. *257 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of fact and the attached exhibits are incorporated herein by this reference. Petitioners Basdeo Balkissoon and Gloria Balkissoon, husband and wife, filed their 1980 joint Federal income tax return on July 16, 1991. Petitioners resided in Bethesda, Maryland, when they filed their petition. Petitioners reported a $ 38,611.09 loss on their 1980 Schedule C relating to their investment in the Upper Cumberland River Mining Program (Upper Cumberland). Upper Cumberland was a coal mining project which was promoted by Abraham Zimmerman and Martha Epstein. These individuals were also the promoters in the case of Zimmerman v. Commissioner, T.C. Memo. 1987-534. A Confidential Memorandum was prepared for the Upper Cumberland program. The Confidential Memorandum contained a number of attachments which explained various aspects of the Upper Cumberland program. These attachments included the following: (1) Sublease Agreement; (2) Mining Engineering Report; (3) Tax Opinion; (4) Joint Operating Agreement; (5) Financial Projections; (6) Mining Development Agreement; (7) Mining Services *258 Agreement; (8) Co-Sales Agency Agreement; (9) Offeree Questionnaire; (10) Offerees Representative Questionnaire; (11) Subscription Agreement and Power of Attorney; (12) Stipulation of Election; and (13) Investment Letter. Although a copy of petitioners' Confidential Memorandum was stipulated into evidence at trial, none of the above-referenced documents were dated, filled in, or executed. The Upper Cumberland program was offered by AMCOAL Energy Corporation (AMCOAL) in 1980. AMCOAL was a recently formed Florida corporation with limited financial resources. AMCOAL was the operating manager for the Upper Cumberland program, and Abraham Zimmerman and Martha Epstein were the president and secretary/treasurer, respectively. AMCOAL was also the operating manager in the case of Zimmerman v. Commissioner, T.C. Memo. 1987-534. The contract miner for the Upper Cumberland program was Dark Ridge Fuels, Inc. (Dark Ridge). Dark Ridge, Co-op Reserve Corporation (Co-op), and another corporation were involved with this program. These corporations were owned by four individuals, Fred E. Morgenstern, David A. Morgenstern, James H. Morgenstern, and Tom Sisk, Jr., holding the *259 positions of president, vice president, treasurer, and executive secretary, respectively. Dark Ridge was incorporated in Kentucky in June 1979, with limited financial assets. The Upper Cumberland program offered 35 "working interests" for an initial cash contribution of $ 25,000 and the execution of a recourse promissory note in the amount of $ 57,500 for each working interest. The program also offered one working interest to AMCOAL for $ 500 and a recourse promissory note in the amount of $ 57,500. The property to be mined was on approximately 275 acres of land in Bell County, Kentucky. The property originally consisted of six leases by various individuals to the Co-op Reserve Corporation (Co-op), which in turn subleased the property to the participants in the Upper Cumberland program. In the sublease agreement, Co-op warranted that to the extent there were not 1,500,000 tons of minable and merchantable coal reserves beneath the Bell County property, it would provide additional coal-bearing property. However, the force majeure clause contained in the sublease agreement states as follows: 12. FORCE MAJEURE: The failure of Sublessees to perform their obligations under *260 this Sublease for reasons beyond their control after using every reasonable effort to cure and remedy any problem of consequence thereof as the result of Acts of God, acts of the public enemy, insurrection, riots, strikes, labor disputes, lock-outs, slow-downs, fires, explosions, floods, shortage of railroad cars, inability to obtain bonds and permits for reasons beyond the control of the Sublessees * * * shall not constitute a breach of this Sublease or a violation of its terms and conditions. Also included shall be the unavailability of commercially merchantable and minable coal on the Property pursuant to the representations of the Sublessor (Co-op) herein and the inability to obtain state and federal mining permits. * * * [Emphasis added.]
The mining development agreement and the mining services agreement contained substantially identical paragraphs, including the last sentence dealing with the unavailability of commercially merchantable and minable coal pursuant to the representations of the sublessor. The mining services agreement contained a minimum mining commitment paragraph. Under this provision, the contract miner, Dark Ridge, warranted to mine and make *261 available for delivery no less than 120,000 tons of merchantable coal by the end of 1981 and in each year thereafter. The provision also provided for liquidated damages in the event the contract miner was unable to meet the minimum delivery commitment. These liquidated damages were in an amount equal to $ 2.49 multiplied by the difference between the 120,000 tons and the actual tons delivered in such calendar year. Under the mining development agreement, Dark Ridge, as contract miner, agreed to charge the participants $ 2,675,500 in cash and notes for the development of the coal reserves and to construct and maintain facilities necessary to extract coal at a rate of 120,000 tons per year. Dark Ridge was to receive $ 605,500 in cash and an aggregate of $ 2,070,000 in notes. In the mining services agreement, Dark Ridge agreed to provide services at a base price of $ 19.30 per ton for coal mined and removed from the property, plus an amount equal to 50 percent of the net sales proceeds of coal sold in excess of $ 28.50 per ton. The Confidential Memorandum also contained financial projections prepared by Lipkin & Lewis, a professional association of certified public accountants. *262 In making their projections, Lipkin & Lewis assumed that the mine would produce 120,000 tons of coal per year and that the coal would be sold for $ 28.50 a ton. According to their projections, an investor with a one-half unit would have a loss of $ 38,555 for the first year and income of $ 2,460 to $ 3,246 per year for the remaining years of the program. Also attached to the Confidential Memorandum was a copy of a Mining and Engineering Report which was purportedly prepared by Paul Lyon of Mineral Laboratories, Inc., and Edward L. Stipp. Mr. Lyon did not prepare or review this report. The report was not on his stationery. Mr. Lyon did not know Mr. Stipp. Mr. Stipp did not prepare this report, did not know Mr. Lyon, and did not work for Mr. Lyon's company. At some time, both men became aware that their names were used on reports which they had not prepared. Petitioners offered no other evidence to indicate that commercially marketable quantities of coal had been disclosed on the subject property before the expenditures were made under the Upper Cumberland program. At trial, petitioners were unsuccessful in introducing a copy of the front side of two checks in the amount of *263 $ 6,250 in support of their cash investment in Upper Cumberland. Petitioners did not offer the original checks. The Confidential Memorandum, detailing the Upper Cumberland subscription offering, required petitioners to execute a recourse promissory note for part of their alleged investment. Neither the note nor any check in payment on such a note was offered into evidence. Petitioners executed a general power of attorney, Form 2848, for years including 1980, to Richard W. Watkins, CPA, and Alvin M. Feit, Esq., on March 13, 1983. On October 7, 1983, Mr. Feit signed, as the taxpayers' representative, a Form 872-A, Special Consent to Extend the Time to Assess Tax. Form 872-A extended the statute of limitations on assessment for the year 1980, but only with respect to adjustments arising from the taxpayers' investment in Upper Cumberland. The instructions on the reverse side of Form 872-A provide that "If you are an attorney or agent of the taxpayer(s), you may sign this consent provided the action is specifically authorized by a power of attorney." The Form 872-A at issue was signed on behalf of the Internal Revenue Service by Larry R. Kaufman, Group Manager, on October 13, 1983. *264 The Form 872-A was not terminated by any event other than the timely issuance of the notice of deficiency. On November 14, 1983, petitioners executed another general power of attorney to Burton J. Haynes, Esq., Louis H. Diamond, Esq., and K. Neil Spicer, CPA. This power of attorney revoked all previously executed powers of attorney. OPINION 1. Statute of Limitations
In Bridges v. Commissioner, T.C. Memo. 1983-763, we stated that: Section 6501(c)(4) provides for an extension of the statute of limitations where both the Secretary and the taxpayer so agree in writing. The term "Secretary" is defined in section 7701(a)(11)(B) to mean the "Secretary of the Treasury or his delegate." Section 7701(a)(12)(A)(i) defines the phrase "or his delegate" as "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context."
Section 301.7701-9(b), Proced. & Admin. Regs., provides in pertinent part that if a function is vested by statute in the Secretary of the Treasury or his delegate, such *265 function may be delegated or redelegated to a district director. Section 301.6501(c)-1(d), Proced. & Admin. Regs., specifically provides that a district director may sign consents extending the statute of limitations. The district director may redelegate the authority to sign consents to any "employee performing services under his supervision and control, unless such power to so redelegate is prohibited or restricted by proper order or directive." Sec. 301.7701-9(c), Proced. & Admin. Regs. * * *
In Bridges v. Commissioner, T.C. Memo. 1983-763, we also explained that:
Where the taxpayer makes a prima facie case by alleging that assessment is barred by expiration of the period of limitations on assessment, respondent must go forward with countervailing evidence to show that the period had not expired when the notice of deficiency was issued. Respondent's burden of going forward with the evidence is discharged by introducing into evidence a consent, valid on its face, which extends the period for assessment up to mailing of the notice of deficiency. Concrete Engineering Co. v. Commissioner, 19 B. T. A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932); *266 see Schenk v. Commissioner, T.C. Memo. 1976-363. As was explained in Concrete Engineering Co., once the consent appears to be regular on its face and in accordance with the law, we will presume that the party who signed on behalf of respondent acted within the scope of his authority, in the absence of a showing to the contrary. * * *
Where, as in the instant case, respondent has established that the Form 872-A consent was regular on its face and, in accordance with the law, was in writing, the burden is on petitioners to show that the parties who signed the consent acted without authority. Petitioners argue that the statute of limitations for making an assessment expired because Mr. Feit lacked specific authority to execute the Form 872-A. Petitioners gave Mr. Feit a general power of attorney on March 13, 1983. On October 7, 1983, Mr. Feit executed the Form 872-A consent extending the statute of limitations for 1980 indefinitely with respect to petitioners' investment in Upper Cumberland. The instructions on the reverse side of Form 872-A provide that "If you are an attorney or agent of the taxpayer(s), you may sign this consent provided the action *267 is specifically authorized by a power of attorney". (Emphasis added.) Inasmuch as the general power of attorney granted to Mr. Feit gave him the power "to perform any and all acts that the principal(s) can perform" with respect to their 1980 tax year, this broad language encompasses any specific authority. (Emphasis added.) As we long have held, a general power of attorney gives petitioners' representative the power to extend the statute of limitations, and the absence of explicit words or specific words does not render the waiver ineffective. Estate of Sam Maceo, T.C. Memo. 1964-46. Petitioners also argue that the Form 872-A consent executed by Mr. Feit on October 7, 1983, does not survive a subsequent power of attorney given to Mr. Haynes on November 14, 1983. Petitioners cite no authority for this proposition. We find their argument to be without merit. In their reply brief, petitioners admit that during the year in issue the District Director may delegate his authority to a group manager at the examination level. Mr. Kaufman was such a group manager and properly executed the consent. The argument in the reply brief that the consent of the Regional *268 Director of Appeals (or his delegate) is based on the predicate that this case was at the appellate level when the consent was signed by Mr. Kaufman. No reference is made to the record to support this predicate, and we are unaware of any such support in the record. We reject this argument. Lastly, petitioners' argument on reply brief that there was a lack of jurisdiction because of a lack of proof that the notice of deficiency was mailed by registered or certified mail is meritless. Section 6212(a) authorizes the Secretary to send notices of deficiency by registered or certified mail. Other means of delivery may be used. Actual notice of a notice of deficiency to a taxpayer will suffice whether delivered by certified mail, ordinary mail, or hand delivery. McKay v. Commissioner, 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); see Boren v. Riddell, 241 F.2d 670 (9th Cir. 1957). It is clear that a notice of deficiency was mailed to, and received by, petitioners and that they timely filed a petition with this Court. Thus, we have jurisdiction over this case. Secs. 6212, 6213, and 7442; Rule 13(a) and (c); *269 Brown v. Commissioner, 78 T.C. 215, 220 (1982). 2. Upper Cumberland Loss Respondent advances a number of arguments to support the disallowance of the $ 38,611.09 loss claimed by petitioners with respect to their Upper Cumberland investment. At the outset, respondent argues that petitioners are not entitled to the $ 38,611.09 loss because they failed to prove that they made an investment in such program. At trial, petitioners did not have any checks showing an investment in the program. Petitioners argue that the photocopies of the front of two checks in the amount of $ 6,250, which were not received in evidence, show the checks were negotiated. Without the backs of these two checks we do not know who cashed them. The copies of the checks were consecutive in number and were dated a month apart even though petitioner testified that he did many things out of this checking account. Except for petitioners' testimony that "I think it was $ 12,500," no evidence was introduced to support a $ 12,500 cash investment. We are not obligated to accept petitioners' self-serving testimony as gospel. Tokarski v. Commissioner, 87 T.C. 74 (1986). *270 In addition, petitioners failed to introduce any evidence to establish that they signed recourse promissory notes or that payments were ever made on such notes. Nevertheless, we do not believe the promoters would have furnished petitioners with the information necessary to prepare their return if they had not made any investment. We therefore find that petitioners made some payment to the Upper Cumberland project. However, petitioners' losses must be disallowed because they failed to establish that legitimate development expenditures were paid or incurred in accordance with section 616(a). Section 616(a) provides, in part, that "there shall be allowed as a deduction in computing taxable income all expenditures paid or incurred during the taxable year for the development of a mine or other natural deposit * * * if paid or incurred after the existence of ores or minerals in commercially marketable quantities has been disclosed." Section 1.616-1(a), Income Tax Regs., provides that "Development expenditures under section 616 are those which are made after such time when, in consideration of all the facts and circumstances (including actions of the taxpayer), deposits of ore or other *271 mineral are shown to exist in sufficient quantity and quality to reasonably justify commercial exploitation by the taxpayer." Under section 616(b), a taxpayer is allowed a deduction for development expenditures whether or not such expenditures are made in the development or production stage of the mine or other natural deposit. Sec. 1.616-1(a), Income Tax Regs.
The burden of proving that expenditures for the development of the Upper Cumberland mine were incurred after commercially marketable quantities of coal had been discovered is on petitioners. Conforte v. Commissioner, 74 T.C. 1160, 1177 (1980), affd. in part, revd. in part, and remanded 692 F.2d 587 (9th Cir. 1982). In order to be entitled to deduct mine development expenditures, two requirements must be met: (1) The expenditure must have been paid or incurred after the existence of ore or minerals in commercially marketable quantities has been disclosed; and (2) the expenditures must be for the development of the mineral deposit. Zimmerman v. Commissioner, T.C. Memo. 1987-534. Whether a development expense was paid or incurred after the disclosure of the existence *272 of ore or other mineral in sufficient quantity and quality to reasonably justify commercial exploitation depends on all the facts and circumstances of the particular case. Sec. 1.616-1(a), Income Tax Regs.
In order to determine whether mine development expenditures were paid or incurred after the existence of coal in commercially marketable quantities has been disclosed, we must determine the sufficiency of the exploration program. Thomas v. Commissioner, 84 T.C. 1244 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). The economic and commercial viability of an operation is dependent upon the quantity, quality, accessibility, and marketability of the coal. Accordingly, the result of an exploration program must be viewed in light of the financial and market assumptions analysis that establishes the existence of a commercial deposit. Thomas v. Commissioner, 84 T.C. at 1276. This Court in Capek v. Commissioner, 86 T.C. 14, 30-31 (1986), stated that a multiphase exploration program was essential to determine whether coal could be mined at a profit from a selected block of land. A multiphase exploration program *273 requires progressive evaluations to be made after each phase of the excavation program. This insures greater certainty that coal is present in sufficient quantities to warrant expenditure of additional funds. The first phase of the exploration program is a preliminary investigation made to determine if potential coal reserves are located on the property. The next phase is the feasibility analysis, which includes an analysis of market needs and location, transportation availability and cost, and product quality and quantity versus consumer specifications and demand. If the feasibility analysis is favorable, a detailed mine design and reclamation plan are developed as the final step. The Confidential Memorandum contained a bogus engineering report purportedly prepared by Messrs. Paul Lyon and Edward Stipp. That report stated that there were approximately 1.6 million tons of recoverable coal reserves in the subject area. It also provided an estimate of the development costs required to bring the Upper Cumberland property into production. Mr. Earl Hoover, an Internal Revenue Service mining engineer, prepared an expert's report relating to the Upper Cumberland program and petitioners' *274 bogus report. In his report, Mr. Hoover pointed out several problems with petitioners' alleged report. Among other things, petitioners' report is not based on measured geological data points or established mining methods. There were no core drillings, channel cuts, or other clearly identified prospect points. In fact, there were no engineering plans for developing a mine, and a mine feasibility study had not been done based on proven geological facts. Finally, minable and merchantable coal reserves were not identified or were insufficient to cover the minimum reserve requirements for the Upper Cumberland program. Mr. Hoover concluded, and we agree, that both the geological portion and the itemization of mine development costs contained in petitioners' bogus report lacked sufficient substance to support the proposition that there were commercially marketable quantities of coal on the Upper Cumberland property, and that, while some mining occurred, profitability was questionable from the start. In view of these defects in the bogus report and because it was not prepared by either Mr. Lyon or Mr. Stipp, we give no credence to it. The financial projections contained in the Confidential *275 Memorandum may have been prepared by an accountant who was not an expert in the mining industry. The purpose of the financial projections was to indicate to potential investors the existence of at least a $ 75,000 deduction in the first year in return for a $ 25,000 investment per unit. Further, while the financial projections were based upon production of 120,000 tons per year, it is impossible to determine how much coal was actually mined and sold in 1980. We find that the amounts actually mined fell significantly short of the 1,500,000 ton minimum agreed to be mined over the life of the program. Petitioners presented no further evidence to indicate that commercially marketable quantities of coal had been disclosed on the Upper Cumberland property before expenditures were made. On this record, we hold that petitioners have failed to carry their burden of proof that the expenditures were deductible under section 616. Rule 142(a). 3. Activity Not Engaged in for Profit
Respondent asserts, in support of his argument for disallowing petitioners' loss and for imposing the increased interest under section 6621(c), that the Upper Cumberland coal mining activities were *276 not engaged in with an actual and honest objective of making a profit. In this regard while reasonable expectation is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The determination of whether the requisite profit objective exists is one of fact to be established on the basis of all surrounding facts and circumstances. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). The burden of proving this profit objective rests with petitioners. Rule 142(a). Greater weight should be given to the objective facts than to mere statements of intent. Sec. 1.183-2(a), Income Tax Regs.
The profit objective analysis must be made at the partnership level. Thomas v. Commissioner, 84 T.C. at 1269. Therefore, we must examine the actions of the promoters and general managers of the Upper Cumberland program, i.e., Abraham Zimmerman *277 and Martha Epstein. Seaman v. Commissioner, 84 T.C. 564, 589 (1985). On this record, we conclude that petitioners have not carried their burden of proving that the Upper Cumberland program was organized and operated with the objective of realizing an economic profit. When we look past petitioners' self-serving testimony to the objective facts, we find that the objective behind the formation of this program was to secure attractive tax write-offs. Initially, we observe that copies of the alleged "full-recourse" promissory notes applicable to the Upper Cumberland program were not offered into evidence. However, the mining development agreement between petitioners and the contract miner, Dark Ridge, ensured that the notes would be satisfied, if at all, by either coal proceeds or by forfeiture of petitioners' working interest. The net effect of the mining development agreement was to ensure that petitioners would not be required to make any additional out-of-pocket cash payments. These notes were not used to provide cash flow to finance mine development, because cash flow was dependent entirely on mining. These notes had absolutely no apparent business purpose *278 except to provide the participants with inflated tax deductions. Thomas v. Commissioner, 84 T.C. at 1280-1282. Each purchaser of a one-half interest in the Upper Cumberland program was able to achieve an initial tax loss of approximately $ 38,600 for a total cost of $ 12,500, in accordance with the projected 3-to-1 tax write-off. Investigation into the economic feasibility of these programs was sorely lacking. The operating manager of this program was AMCOAL and the president of AMCOAL was Abraham Zimmerman, and its secretary/treasurer was Martha Epstein. Cf. Zimmerman v. Commissioner, T.C. Memo. 1987-534. The Confidential Memorandum stated that Mr. Zimmerman did not have any technical or business training in the field of coal mining. Although Mr. Zimmerman was experienced as a syndicator, petitioners did not argue that Mr. Zimmerman's syndication experience in any way prepared him for the coal mining business. The Confidential Memorandum for the Upper Cumberland program includes a document entitled "Financial Projections". These projections discuss the results that might be achieved should all assumptions be realized. The projections *279 were prepared by Lipkin & Lewis, P.A., CPAs, based solely on information provided by AMCOAL and Mr. Zimmerman. The coal prices were determined on the basis of a flat figure for purposes of the 1980 through 1992 projections. These projections are of no value with regard to the decision to develop the property. Thus, the financial projections contained in the Confidential Memorandum are not a competent economic analysis of the feasibility of the program. We have considered petitioners' other arguments and find them to be without merit. We hold that the Upper Cumberland coal mining program was not an activity engaged in with an actual and honest objective of making a profit within the meaning of section 183. Accordingly, petitioners' claimed losses from Upper Cumberland are disallowed under section 183. 4. Section 6621(c)
The next issue for decision is whether petitioners are liable for the increased rate of interest under section 6621(c). Section 6621(c) provides that with respect to interest payable under section 6601, an increase in the rate of interest to 120 percent of the otherwise applicable rate is imposed when there is a "substantial underpayment" (an underpayment *280 in excess of $ 1,000) attributable to tax motivated transactions. The increased rate of interest applies to interest accruing after December 31, 1984, even though, as here, the transaction was entered into prior to the date of enactment of section 6621(c). DeMartino v. Commissioner, 88 T.C. 583, 589 (1987), affd. 862 F.2d 400 (2d Cir. 1988). The temporary regulations provide that any deduction disallowed under section 183 is a tax-motivated transaction, and accordingly the underpayment attributable to such disallowance is subject to the increased interest under section 6621(c). Sec. 301.6621-2T, A-4(1), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). Because we have held that petitioners' Upper Cumberland losses are disallowed under section 183, petitioners will be subject to the increased rate of interest under section 6621(c) if the underpayment exceeds $ 1,000. See Harmon v. Commissioner, T.C. Memo. 1986-305. 5. Section 6653(a)
Section 6653(a) provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations there *281 shall be added to the tax an amount equal to 5 percent of the underpayment. Petitioners contend that they should not be subject to the addition to tax under 6653(a) because Dr. Balkissoon and his accountant reviewed the Upper Cumberland offering memorandum and decided it was a good investment. Reasonable and good-faith reliance by a taxpayer on an accountant or attorney may be sufficient to avoid the addition to tax for negligence. United States v. Boyle, 469 U.S. 241, 250 (1985). "However, to escape the penalty on this ground taxpayers must be able to show that the accountant reached his decisions independently after being fully apprised of the circumstances of the transactions." Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir. 1969), affg. per curiam T.C. Memo. 1968-98. Petitioners presented no evidence to support the conclusion that their accountant's advice was based upon full knowledge of the circumstances of the transaction. Based on the record before us, we find that petitioners have not sustained their burden of proof with respect to this issue. Rule 142(a). Accordingly, petitioners are liable for the addition *282 to tax under section 6653(a). 6. and 7. Section 6673
The final issues for decision are: (1) Whether petitioners are liable for a penalty under section 6673(a)(1); and (2) whether petitioners' former counsel, William Randolph Klein, is liable for excess costs under section 6673(a)(2). Section 6673(a), as amended by section 7731(a) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2400 (applicable to positions taken after December 31, 1989, in proceedings pending on or commenced after such date), provides that: (1) PROCEDURES INSTITUTED PRIMARILY FOR DELAY, ETC. -- Whenever it appears to the Tax Court that -- (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, or * * *
the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000. (2) COUNSEL'S LIABILITY FOR EXCESSIVE COSTS. -- Whenever it appears to the Tax Court that any attorney or other person admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, *283 the Tax Court may require -- (A) that such attorney or other person pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct, or
* * * Petitioners contend that because "coal had been mined on the property in question" and because they "believed that the IRS actions in disallowing the development costs in full and asserting penalties were unjust" they should not be held liable for a penalty under section 6673(a)(1). Petitioners' contentions are not convincing. In Oneal v. Commissioner, 84 T.C. 1235, 1243 (1985), we said: "Petitioners have forced an already overburdened Court and tax system to unnecessarily consume precious resources. Petitioners, and others who participate in specious tax stratagems, must accept the consequences of their actions." The tax shelter at issue in this case is not distinguishable from that considered in Zimmerman v. Commissioner, T.C. Memo. 1987-534. Although some coal was mined in this case, it fell far short of what was necessary to reach profitability, and was not enough to convince us that the activity was engaged in with an actual and honest profit *284 objective. After consideration of the entire record in this case, we hold that petitioners' positions were frivolous and groundless and that this proceeding was instituted and maintained primarily for delay. In our discretion, we determine that respondent's motion for a penalty under section 6673(a)(1) should be granted and accordingly we will require petitioners to pay a penalty to the United States in the amount of $ 10,000. Section 6673(a)(2) provides that an attorney can be held personally liable for excess costs, expenses, and attorneys' fees if he unreasonably and vexatiously multiplies the proceedings in any case. In the exercise of our discretion, we have decided not to require William Randolph Klein, petitioners' original counsel, to pay excess costs in this case, although we warn him that if in the future he conducts himself in the manner in which he did in this case, he may be held liable under section 6673(a)(2). An order will be issued restoring this case to the general docket for further trial or other disposition. Footnotes
1. William Randolph Klein, original counsel for petitioners, was withdrawn as counsel after the trial of this case. Martin I. Bierman filed the brief on behalf of petitioners and then was withdrawn as counsel. Brett Weiss filed the reply brief on behalf of petitioners.↩
2. This case was set for hearing only on the issues related to the Upper Cumberland River Mining Program. Other issues remain for trial or other disposition.↩