UNITED STATES of America,
Plaintiff,

v.

Joel L. BOYCE; Delynn E. Boyce; Perfect Accord Unlimited; JPMorgan Chase Bank; the State of California Franchise Tax Board; Bank of America, National Association; City of Thousand Oaks; and Ventura County Tax Collector, Defendants.

Case No. CV 13–00601 MMM (JEMx).

United States District Court,
C.D. California.

Signed July 8, 2014.

Andrew Pribe, Office of U.S. Attorney, Los Angeles, CA, for Plaintiff.

Joel L. Boyce, Newbury Park, CA, pro se.

Delynn E Boyce, Newbury Park, CA, pro se.

Jed P. White, Bryan Cave LLP, Santa Monica, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING JOEL BOYCE'S AND DELYNN BOYCE'S MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

### I. BACKGROUND

#### A. Procedural Background

On January 28, 2013, the United States ("the government") filed this action against Joel L. Boyce ("Joel"); Delynn E. Boyce ("Delynn") (collectively "the Boyces"); Perfect Accord Unlimited ("Perfect"); JPMorgan Chase Bank ("Chase"); the State of California Franchise Tax Board; ("FTB"); Bank of America, N.A.; the City of Thousand Oaks; and the Ventura County Tax Collector.[1] The government seeks to reduce federal income tax assessments against Joel Boyce to judgment, to foreclose federal tax liens against all defendants, and to set aside an allegedly fraudulent conveyance of real property by the Boyces to Perfect.[2] The government also asks the court to order the sale of the real

---

1. Complaint, Docket No. 1 (Jan. 28, 2013).

2. *Id.,* ¶¶ 14–68.

property that is the subject of this action; to determine the interest and priority of Chase, the FTB, Bank of America, the City of Thousand Oaks, and the Ventura County Tax Collector in the property; and to order distribution of the proceeds from the sale of the property accordingly.[3]

On May 3, 2013, the court dismissed the City of Thousand Oaks, which disclaimed all interest in the property.[4] That same day, it relieved the FTB and Bank of America of any obligation to participate further in the action pursuant to a stipulation between them and the government concerning the priority of their respective interests in the property.[5] On May 2, 2014, the court relieved the Ventura County Tax Collector of any obligation to participate further in the action pursuant to a stipulation between it and the government concerning the priority of their respective interests.[6] On May 9, 2013, the clerk entered Chase's and Perfect's defaults.[7] Chase's default was set aside on June 18, 2013, pursuant to stipulation.[8] Chase filed

an answer on June 28, 2013, which raised as an affirmative defense the fact that it had a security interest in the property senior to the claim of the government and all defendants in the action.[9]

On July 19, 2013, the court issued an order granting the government's motion for entry of default judgment against Perfect.[10] In the order, the court stated that "[w]hen the action against the remaining parties [was] resolved, [it would] enter judgment finding that Perfect [was] the alter ego of the Boyces, that their transfer of the Property to it was fraudulent, and that the Government [was] entitled to foreclose on the federal tax liens that encumber the Property."[11] On November 13, 2013, the government filed a motion for summary judgment.[12] Chase has not opposed the motion. The Boyces have filed opposition.[13]

On November 27, 2013, the Boyces filed a motion to compel responses to interrogatories and the production of documents.[14]

---

**3.** *Id.* at 21.

**4.** Order re Stipulation to Dismiss Party ("Dismissal Stip."), Docket No. 16 (May 3, 2013).

**5.** Order re Stipulation ("CTB and BofA Stip."), Docket No. 17 (May 3, 2013).

**6.** Granting Stipulation and Order ("Ventura Stip."), Docket No. 73 (May 2, 2014).

**7.** Default by Clerk Entered, Docket No. 21 (May 9, 2013).

**8.** Order Granting Stipulation to Set Aside Default Against JPMorgan Chase Bank, Docket No. 31 (June 18, 2013).

**9.** Answer, Docket No. 32 (June 28, 2013) at 5.

**10.** Order Granting the United States' Motion for Entry of Default Judgment Against Defendant Perfect Accord Unlimited ("Default Judgment Order"), Docket No. 37 (July 19, 2013).

**11.** *Id.* at 14.

**12.** Motion for Summary Judgment ("MSJ"), Docket No. 42 (Nov. 13, 2013).

**13.** Memorandum in Opposition to Motion for Summary Judgment ("Opp. to MSJ"), Docket No. 67 (Apr. 15, 2014). The Boyces did not file opposition prior to the initial hearing date of January 27, 2014. The hearing was continued, however, and on April 14, 2014, the Boyces filed a motion for leave to file opposition, which the court granted on April 15, 2014. (Motion for Leave to File Opposition to Motion for Summary Judgment, Docket No. 63 (Apr. 14, 2014); In Chambers: Order Granting Motion for Leave, Docket No. 66 (Apr. 15, 2014).) The Boyces subsequently filed a second opposition on June 13, 2014. (Opposition to Motion for Summary Judgment ("2nd Opp. to MSJ"), Docket No. 78 (June 3, 2014).)

**14.** Motion to Compel ("MTC"), Docket No. 49 (Nov. 27, 2013).

The Boyces sought, *inter alia*, production of notices of deficiency for 2003–2005; IRC § 6020(b) certifications, also known as "substitute for returns" ("SFRs") for 1998, 1999, 2004, and 2006–2008; and various documents substantiating the job titles, job descriptions, and duties of the individuals who prepared the notices of deficiency and SFRs.[15]

On January 22, 2014, with their motion to compel pending and the government's summary judgment motion scheduled for hearing on January 27, 2014, the Boyces filed a motion to continue the hearing on the summary judgment motion,[16] which the court granted on January 24, 2014.[17] On February 11, 2014, Magistrate Judge John E. McDermott denied the Boyces' motion to compel.[18] On February 21, 2014, they filed a motion for reconsideration of Judge McDermott's February 11 order.[19] On May 2, 2014, the court issued an order granting in part and denying in part the Boyces' motion (the "May 2 Order").[20] The court directed the government to con-

duct a good faith search for notices of deficiency for tax years 2003–2005, which the government had previously stated it was unable to locate, and to produce any responsive documents it identified. The court directed that, if the government was unable to locate the notices, it was to file and serve on the Boyces a declaration describing the efforts it had made to locate them.[21] The court denied the Boyces' motion in all other respects.[22] On May 22, 2014, the government filed a status report stating that it had been unable to locate the notices and describing its search for the missing documents.[23]

On April 29, 2014, the Boyces filed a motion to dismiss for lack of subject matter jurisdiction.[24] The court took the motion under submission on May 29, 2014.[25]

## B. Factual Background

▇▇▇ Joel Boyce failed to file federal income tax returns for tax years 1998 through 2008.[26] Based on Form 1099s it

15. MTC at 5–6. The specific documentation the Boyces sought consisted of "appointment affidavits," employment histories, duty station data, "Internal Revenue Service Standard Position Description," and an "IRS Performance Management System Manager Performance Agreement." (*Id.* at 6.)

16. Motion to Continue Motion for Summary Judgment, Docket No. 51 (Jan. 22, 2014).

17. Minute Order in Chambers: Order Continuing Motion for Summary Judgment, Docket No. 54 (Jan. 24, 2014).

18. Minutes (In Chambers): Order by Magistrate Judge John E. McDermott: RE Defendants Joel L. Boyce and Delynn E. Boyce's Motion to Compel ("Order re: MTC"), Docket No. 55 (Feb. 11, 2014).

19. Motion for Reconsideration ("MFR"), Docket No. 57 (Feb. 21, 2014).

20. Order Granting in Part and Denying in Part Defendants' Motion for Reconsideration

("May 2 Order"), Docket No. 74 (May 2, 2014).

21. *Id.* at 5, 17.

22. *Id.* at 17.

23. United States of America's Report in Response to the Court's Order Dated May 2, 2014, Docket No. 75 (May 22, 2014).

24. Motion to Dismiss this Case Due to the Absence of Subject Matter Jurisdiction ("MTD"), Docket No. 72 (Apr. 29, 2014).

25. Order Taking Hearing on Defendants' Motion to Dismiss Case Off Calendar, Docket No. 77 (May 29, 2014).

26. United States of America's Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), Docket No. 42–2 (Nov. 13, 2013), ¶1. Because Chase has not opposed the government's motion, and the Boyces have adduced no evidence controverting any of the government's proposed facts, the court

had received reflecting Joel's receipt of taxable income during the period, the government computed his taxable income and sent him notices of deficiency and demands for payment.[27] Joel made only three voluntary payments totaling $1, 050 toward his federal tax liability for these years.[28]

As of November 22, 2013, the total outstanding balance of all federal tax liabilities assessed against Joel for tax years 1998–2008 was $501,872.41.[29]

To satisfy Joel Boyce's outstanding federal tax debt, the government seeks to foreclose federal tax liens against real

deems the government's facts undisputed. The Boyces argue that the government's evidence of Joel's failure to file returns lacks foundation and is hearsay. (Opp. to MSJ at 3.) Under Rule 902(1) of the Federal Rules of Evidence, a "document that bears ... a seal purporting to be that of the United States ... or [of] a department, agency, or officer of any entity named above; and ... a signature purporting to be an execution or attestation" is considered self-authenticating. FED.R.EVID. 902(1). As evidence that Joel Boyce did not file returns, the government proffers certificates of lack of record, which bear the seal of the Department of the Treasury and are signed by Debbie Okray, Chief of Accounting Operations. (MSJ, Exh. T, Docket No. 44 (Nov. 13, 2013).) Accordingly, the records are self-authenticating under Rule 902(1). Under Rule 803(10), "a certification under Rule 902—that a diligent search failed to disclose a public record or statement [is not hearsay] if: (A) the testimony or certification is admitted to prove that (i) the record or statement does not exist." FED.R.EVID. 803(10). Okray "certif[ies] that a thorough search has been made of the records in my custody and no tax form ... was found to have been filed...." (*Id.*) Because the certificates are offered to prove that Joel Boyce did not file tax returns, they are not hearsay under Rule 803(10). The court therefore overrules Boyce's objections.

27. SUF, ¶¶ 2, 3, 7, 10, 13, 16, 19, 22, 25, 28, 31, 34, 50. The Boyces object that the Forms 1099 lack foundation, are hearsay, and are inadmissible for the additional reason that the government has not proffered the companion IRS Forms 1096. (Opp. to MSJ at 3–4). "[E]vidence that satisfies the [authentication] requirement ... [includes] [t]estimony that an item is what it is claimed to be." FED.R.EVID. 901(b)(1). Under the "business records" exception to the hearsay rule, records are not considered hearsay if

"(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." FED.R.EVID. 803(6).

The government proffers the declaration of Philip Conrad, an IRS litigation advisor, who states that "[t]he documents contained in Exhibit W are records reflecting 1099 information that the IRS received for the tax years 1998 through 2008 regarding Joel Boyce. These records are made from information reported to the IRS by third parties at or near the time that information is received by the IRS, kept in the ordinary course of the regularly conducted activity of the IRS, and made pursuant to the regular practice of the IRS." (Declaration of Phillip Conrad ("Conrad Decl."), Docket No. 44 (Nov. 13, 2013), ¶ 7.) Conrad's testimony is sufficient to authenticate the documents under Rule 901(b)(1), and the documents are excepted from the hearsay rule under Rule 803(6). This is true notwithstanding the absence of the Forms 1096. *Stang v. C.I.R.*, T.C. Memo. 2005–154, 2005 WL 1503682, *9 (Tax Ct. June 27, 2005) ("Forms W–2 and 1099 do not cease to be complete and distinct records prepared in the ordinary course of business merely because additional business records, such as Forms W–3 and 1096, are not proffered as evidence"). The court therefore overrules the Boyces' objections.

28. SUF, ¶ 37.

29. *Id.*, ¶ 49.

property located at 163 Fallbrook Avenue, Newbury Park, California ("the Property").[30] On September 13, 1988, the Boyces acquired a one-half interest in the Property as joint tenants.[31] The other one-half interest was acquired by Todd H. Smith and Karrie O. Smith (collectively "the Smiths").[32] On October 11, 1988, the Boyces and the Smiths executed a deed of trust in favor of Great Western Bank;[33] Chase now holds Great Western's interest in the Property.[34] On November 3, 1988, the Smiths quitclaimed their interest in the Property to the Boyces as joint tenants.[35]

Joel filed no federal income tax returns for the 1991, 1992, and 1993 tax years.[36] On December 7, 1995, at a time when Joel was liable to the United States for unpaid federal income tax, the Boyces recorded a quitclaim deed transferring their interest in the Property to Perfect as sole owner.[37] The quitclaim deed stated that the transfer was "[f]or valuable consideration received," but also contained the statement that "[t]his conveyance is a gift and is exempt pursuant to Ordinance 2585."[38]

Perfect is not registered in any capacity with the California Secretary of State or the Internal Revenue Service (IRS).[39] In May 2001, Joel submitted an application seeking approval of a building modification at the Property; on the application, he identified himself as Perfect's manager, and stated, under penalty of perjury, that he had power of attorney for Perfect.[40] In June 2011, Joel once again identified himself as Perfect's manager on a Form 911, which is a request for taxpayer advocate service assistance that is submitted to the IRS.[41]

Despite transferring the Property to Perfect, the gas and electric utilities for the Property remain in Joel's name; he also continues to receive mail at the Property's address.[42] Furthermore, Joel continues to pay the mortgage on the Property and has sent correspondence to the bank stating that he was the purchaser of the property.[43] On a federal tax return he filed in July 1998, Joel identified the Property as his address.[44]

## II. DISCUSSION

### A. Whether the Court Should Dismiss the Action for Lack of Subject Matter Jurisdiction

The court begins by addressing the Boyces' contention in their two opposition briefs and motion to dismiss that the court lacks subject matter jurisdiction to hear the action.[45] The Boyces contend that the

---

**30.** Complaint, ¶ 4; MSJ at 5.

**31.** · SUF, ¶ 63.

**32.** *Id.,* ¶ 64.

**33.** *Id.,* ¶¶ 65–66.

**34.** *Id.,* ¶ 67.

**35.** *Id.,* ¶ 68.

**36.** *Id.,* ¶¶ 90, 92.

**37.** *Id.,* ¶¶ 69; Conrad Decl., ¶ 35.

**38.** SUF, ¶¶ 69, 70.

**39.** *Id.,* ¶¶ 71, 72.

**40.** *Id.,* ¶ 73.

**41.** *Id.,* ¶ 74; Conrad Decl. Exh. II.

**42.** SUF, ¶¶ 87, 88.

**43.** *Id.,* ¶¶ 67, 75, 80; *id.,* Exh. I.

**44.** *Id.,* ¶¶ 99, 100.

**45.** Neither the Boyces' second opposition brief nor their motion to dismiss is properly before the court. Local Rule 7–10 provides, in relevant part, that "[a]bsent prior written order of the Court, the opposing party shall not file a response to the reply." The Boyces did not seek leave to file a sur-reply, and the

court lacks subject matter jurisdiction because no valid notices of deficiency have been produced.[46] As the court explained in its May 2 order on the Boyces' motion for reconsideration, the court has jurisdiction to hear this case under 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340 and 1345 notwithstanding the missing notices of deficiency. *See United States v. Miljus*, No. CV. 06–1832–PK, 2007 WL 3171591, *1 (D.Or. Oct. 28, 2007) (stating, in an action by the government to foreclose federal tax liens, that the court had jurisdiction, *inter alia*, under 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340 and 1345); see also *United States v. Buaiz*, No. 3:07–CV–83, 2010 WL 3517075, *4 (E.D.Tenn. Sept. 3, 2010) (same).

26 U.S.C. § 7402(a) provides, in relevant part: "The district courts of the United States at the instance of the United States shall have such jurisdiction to ... render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 28 U.S.C. § 1340 states, in relevant part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue[.]" Finally, 28 U.S.C. § 1345 provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." Accordingly, to the extent the Boyces contends the court lacks jurisdiction due to the absence of notices of deficiency for specific years, they are incorrect.[47]

The Boyces also argue that the court lacks jurisdiction because the tax code applies only to citizens who reside in the District of Columbia or territories of the United States. Because they does not reside in those areas, they assert they are

court did not authorize the filing of the second opposition brief. Moreover, the brief is 43 pages long exclusive of attached declarations, and therefore violates Local Rule 11–6, which limits memoranda to 25 pages. CACD L.R. 11–6. The court could disregard the brief for these reasons. The Boyces filed a motion to dismiss on April 29, 2014, more than four months after the motion hearing cut-off date. (*See* MTD; Minutes of Scheduling Conference, Docket No. 24 (May 13, 2013).) The Boyces did not file a motion seeking an amendment of the court's scheduling order, and the court has not granted any continuance of the deadline for hearing motions. Consequently, the motion was filed in violation of the scheduling order and the court could strike it on that basis. Nonetheless, because the issue of the court's subject matter jurisdiction can be raised at any time, the court will consider the second opposition and motion to dismiss insofar as they challenge the court's jurisdiction. *See Intercontinental Travel Marketing, Inc. v. F.D.I.C.*, 45 F.3d 1278, 1286 (9th Cir.1994) ("[L]ack of subject matter jurisdiction can be raised any time, even by the court" (citation omitted));

see also *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 395 (4th Cir.2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance," quoting *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)); FED.R.CIV.PROC. 12(h) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

46. MTD at 3–4; Opp. to MSJ at 1–2, 7.

47. As discussed in the court's May 2 order, the lack of a valid notice of deficiency deprives the tax court of jurisdiction, but not the district court. (May 2 Order at 7–9.) Whether the IRS properly issued notices of deficiency to the Boyces is relevant in determining the validity of the assessments and resulting liens, however, and thus to the merits of the government's motion for summary judgment. The court discusses *infra* the argument raised in the Boyces' first opposition brief that the notices of deficiency do not exist and/or were not properly mailed to them.

not liable for federal income tax.[48] Section 1(a) of the Internal Revenue Code imposes an income tax on citizens and residents of the United States. 26 U.S.C. § 1(a); 26 C.F.R. § 1.1–1 ("Section 1 of the Code imposes an income tax on the income of every individual who is a citizen or resident of the United States"). *See also Wright v. United States,* No. 4:04–CV–56–2(CDL), 2004 WL 2238789, *2 (M.D.Ga. Sept. 30, 2004) ("Citizenship and residence are both recognized as constitutional bases for income taxation. The Supreme Court has held that Congress has the power to tax income on the basis of U.S. citizenship alone. The Supreme Court has also held that residence provides substantive jurisdiction to tax income because a resident enjoys the benefits of residence and therefore must share responsibility for the costs of government," citing *Cook v. Tait,* 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895 (1924), and *New York ex rel. Cohn v. Graves,* 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666 (1937)).

The Fourteenth Amendment provides that "[a]ll persons born and naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." The Sixteenth Amendment "authorizes a direct non-apportioned tax upon United States citizens, throughout the nation, not just in federal enclaves; efforts to argue otherwise have been sanctioned." *United States v. Mundt,* 29 F.3d 233, 237 (6th Cir.1994) (quoting *United States v. Collins,* 920 F.2d 619, 629 (10th Cir.1990) (citations omitted)). For this reason, federal courts have uniformly rejected the Boyces' argument that only citizens and residents of the District of Columbia and other federal enclaves are subject to federal tax laws. *Jibilian v. United States,* 174

Fed.Appx. 576, 577–78 (Fed.Cir.2006) (Unpub. Disp.). *See United States v. Cooper,* 170 F.3d 691, 691 (7th Cir.1999) ("Alan Cooper was convicted of tax fraud, sentenced to 46 months in prison, and pursuant to the tax-fraud statute, 26 U.S.C. § 7206, ordered as part of the sentence to pay the costs of prosecution, $19,123.77. He appeals, making typical, and wholly frivolous, tax-protester arguments, such as that only residents of Washington, D.C., and other federal enclaves are subject to the federal tax laws because they alone are citizens of the United States and that wages are not income because they are compensation for working rather than a pure economic rent. These arguments, frivolous when first made, have been rejected in countless cases. They are no longer merely frivolous; they are frivolous squared"); *Mundt,* 29 F.3d at 237 ("Efforts to argue that federal jurisdiction does not encompass prosecutions for federal tax evasion have been rejected as either 'silly' or 'frivolous' by a myriad of courts throughout the nation. In the face of this uniform authority, it defies credulity to argue that the district court lacked jurisdiction to adjudicate the government's case against defendant. For seventy-five years, the Supreme Court has recognized that the sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves").

The Boyces next assert that the court's jurisdiction is limited to individuals residing within the District of Columbia.[49] Citing 28 U.S.C. § 3002(15), which defines the "United States" as "(A) a Federal corporation; (B) an agency, department, commission, board, or other entity of the United States; or (C) an instrumentality of the United States," they contend the court's

---

**48.** 2nd Opp. to MSJ at 35–37, 39.

**49.** *Id.* at 40–41.

jurisdiction extends only to the section of territory occupied by "the ultimate parent Federal corporation," i.e. the District of Columbia.[50] This argument is unavailing. Section 3002(15) defines "United States" only for purposes of 28 U.S.C. §§ 3001 *et seq.*, which governs "Federal Debt Collection Procedure." It does not define the United States as a federal corporation for purposes of the federal tax laws, nor does it circumscribe the court's subject matter jurisdiction. *Kubicki v. United States*, No. 10–10722, 2010 WL 2630112, *2 (E.D.Mich. June 28, 2010) ("[28 U.S.C. § 3002(15)], however, does not define the United States as a federal corporation for purposes of tax collection").

The Boyces contend finally that because 28 U.S.C. § 1345 gives district courts original jurisdiction over "civil actions, suits or proceedings commenced by the United States," it does not provide a jurisdictional basis for actions, such as this one, which are filed by the "United States *of America*" (emphasis added).[51] The court rejects this argument as wholly frivolous.

■ At the hearing, the Boyces asserted that the court lacks jurisdiction to adjudicate the claims against them because they are immune under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). On April 10, 2013, Joel and Delynn Boyce each answered the government's complaint by filing documents styled "Reply to Plaintiff's Complaint and Claim of Sovereign Immunity Pursuant to the FSIA 28 U.S.C. § 1602 through § 1611 *et al.*"[52] The Boyces state that they are directly descended from the sovereign American people, because their ancestors were citizens of one of the original thirteen colonies prior to the signing of the Treaty of Paris in 1783. As a result, they contend, they are "foreign states" entitled to sovereign immunity under the FSIA, which provides in relevant part that "a foreign state shall be immune from the jurisdiction of the courts of the United States[.]" 28 U.S.C. § 1604. Although the Boyces assert that their sovereign immunity claims are "unique and [will] probably [be addressed for] the first time … by this court," [53] their arguments are by no means novel. Taxpayers seeking to avoid payment of taxes have raised such arguments before, and courts have rejected them as frivolous. See, e.g., *United States v. Barcroft*, No. 4:07cv100, 2008 WL 4412242, *1 (E.D.Tex. Sept. 23, 2008) ("Albert Barcroft's claims of being 'an organ of the original Commonwealth of Pennsylvania' and Pamela Barcroft's claims of being 'the direct posterity of the sovereign People of the original State of New Jersey' are not enough to make them foreign states, acting in an official capacity, for purposes of FSIA immunity. In fact, Pamela Barcroft's sworn statements that she is a direct descendant of the founders of the United States of America indicate anything but status as a foreign state under the FSIA. Moreover, even if this Court were to find that the Barcrofts fell under Section 1603's definition of 'foreign state' (which they do not), they still would not be entitled to immunity here. The FSIA contains an exception for suits involving 'rights in immovable property situated in the United States.' 28 U.S.C. § 1605(a)(4). The tax liens at issue here involve tax liens placed on land

---

**50.** *Id.*

**51.** *Id.* at 39.

**52.** Answer filed by Joel Boyce, Docket No. 4 (Apr. 10, 2013); Answer filed by Delynn Boyce, Docket No. 5 (Apr. 10, 2013).

**53.** Answer filed by Joel Boyce, ¶ 7; Answer filed by Delynn Boyce, ¶ 7.

within the United States, making the immunity of the FSIA unavailable"). See also *United States v. Sloan,* 939 F.2d 499, 500–01 (7th Cir.1991) (rejecting as frivolous a taxpayer's argument that he was "not a citizen of the United States, but rather, that he is a freeborn, natural individual ..., [and was] not subject to the jurisdiction of the laws of the United States"); *Stoecklin v. C.I.R.,* 865 F.2d 1221, 1224 (11th Cir.1989) (rejecting as frivolous a taxpayer's argument that he was a "freeborn and sovereign" person and was, therefore, not subject to income tax laws); *Lonsdale v. United States,* 919 F.2d 1440, 1447 (10th Cir.1990) (rejecting as frivolous taxpayer's argument that "free born, white, preamble, sovereign, natural, individual common law de jure citizens of a state" are not subject to taxation under the Internal Revenue Code); *United States v. Dawes,* 874 F.2d 746, 751 (10th Cir.1989) (rejecting an individual's assertion that he was a "sovereign" exempt from taxes); *United States v. Studley,* 783 F.2d 934, 937 (9th Cir.1986) (rejecting as frivolous a taxpayer's assertion that he was "an absolute, freeborn and natural individual" and thus not a "taxpayer"). The court accordingly rejects the Boyces' argument that they are immune from the nation's tax laws and beyond the exercise of the court's jurisdiction.

In sum, the Boyces' jurisdictional arguments lack merit, and the court turns to the merits of the government's motion.

## B. Standard Governing Motions for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.PROC. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); FED.R.CIV.PROC. 56(e).

In judging the evidence presented in support of or opposition to summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). Nonetheless, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Nelson v. Pima Community College,* 83 F.3d 1075, 1081–82 (9th Cir.1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49, 56 (2d Cir.1985); *Thornhill*

*Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

### C. Whether the Government is Entitled to Summary Judgment

### 1. Whether the Government is Entitled to Reduce its Tax Assessments Against Joel Boyce to Judgment

#### a. Whether the Government's Action is Timely

■ As a threshold issue, the court must determine whether the government's action is timely. Under 26 U.S.C. § 6502(a)(1), the government has ten years from the date of assessment to file suit to reduce the assessment to judgment.[54] The earliest assessment date for the 1999 through 2008 tax years was October 4, 2004.[55] The government therefore had until October 4, 2014 to file an action regarding the assessments against Joel. Because it commenced this action on January 28, 2013, its suit is timely with regard to the 1999 through 2008 tax years.

The assessment date for the 1998 tax year, however, was December 25, 2000.[56] Without tolling, the government had only until December 25, 2010 to commence an action to reduce the assessment to judgment. Under 26 U.S.C. § 6330(e)(1), the statute of limitations is tolled for the period during which a taxpayer's Collection Due Process ("CDP") hearing, or appeal thereof in the Tax Court, is pending. 26

U.S.C. § 6330(e)(1); *United States v. Howard,* No. CV 07–620 TUC DCB(HCE), 2008 WL 4471333, *4–5 (D.Ariz. June 25, 2008) (tolling the statute of limitations under § 6330(e)(1) during the pendency of defendant's CDP hearing).

■ Joel initiated two CDP hearings with regard to the 1998 tax year. He initiated the first on November 1, 2002; it concluded on March 8, 2003.[57] On February 11, 2003, he initiated a second hearing, which concluded on December 7, 2004.[58] Thus, the limitation period for the 1998 tax year was tolled for the period from November 1, 2002 through December 7, 2004, a total of 768 days.[59] Adding 768 days to the December 25, 2000 assessment date yields a date of February 1, 2003. The government thus had until February 1, 2013 to file suit on the assessment for the 1998 tax year. Because it filed suit complaint on January 28, 2013, its action is timely as to the 1998 tax year as well.

#### b. Whether the IRS Produced and Mailed Notices of Deficiency

■ "The IRS is generally prohibited from assessing and proceeding with collection of a deficiency in tax until a notice of deficiency is issued and either: (1) The period during which the taxpayer may request judicial redetermination of the deficiency expires; or (2) if a petition is filed with the Tax Court, a decision of the Tax Court redetermining the deficiency be-

---

**54.** 26 U.S.C. § 6502(a)(1) provides: "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun ... within 10 years after the assessment of the tax[.]"

**55.** The government provides the following assessment dates for the 1999 through 2008 tax years: October 4, 2004 (1999–2002 tax years); March 31, 2008 (2003–2005 tax years);

March 25, 2009 (2006 tax year); November 15, 2011 (2007 tax year); and January 9, 2012 (2008 tax year). (SUF, ¶¶ 9, 12, 15, 18, 21, 24, 27, 30, 33, 36.)

**56.** *Id.,* ¶ 6.

**57.** *Id.,* ¶¶ 51–52.

**58.** *Id.,* ¶¶ 53–54.

**59.** *Id.,* ¶ 102.

comes final." *Upchurch v. C.I.R.*, No. 19730–04L, 2007 WL 1975434, *4 (Tax Ct. July 9, 2007) (citing 26 U.S.C. § 6213(a)).

The IRS issues a notice of deficiency if it determines that a taxpayer has not paid the correct amount of tax. *Elings v. C.I.R.*, 324 F.3d 1110, 1112 (9th Cir.2003) (citing 26 U.S.C. § 6212(a)). The IRS may send the notice to the taxpayer by either certified or registered mail. *Id.* (citing § 6212(a)). It is normally sufficient to send the notice to the taxpayer's last known address. *Id.* (citing 26 U.S.C. § 6212(b)). Taxpayers in the United States have ninety days after the notice is mailed to "file a petition with the Tax Court for a redetermination of the deficiency." *Id.* (quoting 26 U.S.C.·§ 6213(a)). *See United States v. Reece,* No. 1:99–CV–00415, 99–CV–4155, 2002 WL 850201, *7 (W.D.N.Y. Mar. 25, 2002) ("Upon receiving the deficiency notice, the taxpayer has 90 days to petition the Tax Court for a determination which, if decided in the taxpayer's favor, would permit the taxpayer to avoid assessment and collection of the deficiency stated in the notice").[60] If the taxpayer does not file a petition in the Tax Court within the specified period, the tax deficiency "shall be assessed and shall be paid upon notice and demand from the Secretary." 26 U.S.C. § 6213(c). If the deficiency is not paid, a lien arises in favor of the United States on all real and personal property of the taxpayer as of the date the assessment is made. *Id.,* §§ 6321, 6322. The IRS is authorized to levy on the taxpayer's property, after notice, to recover unpaid taxes. *Id.,* § 6331.

 The Boyces argue that no valid notices of deficiency have been produced, and that the government has failed to demonstrate that notices were mailed to Joel's last known mailing address.[61] The government has proffered notices of deficiency for the 1998, 1999, 2000, 2001, 2002, 2006, 2007, and 2008 tax years.[62] It has also produced evidence that a notice of deficiency for each of these years was mailed to Joel's Newbury Park address.[63] Although the government has not produced notices of deficiency for the 2003–2005 tax years, Conrad states that the IRS's standard practice is to mail a notice of deficiency by certified mail to the taxpayer's last known address after a deficiency has been determined, and if the taxpayer has not filed suit in Tax Court within 90 days, to assess the deficiency.[64] The government has produced certificates of assessment for, *inter alia,* the 2003,

---

**60.** Prior to 1924, a taxpayer against whom the Commissioner determined a deficiency could not seek judicial review until after the liability had been paid. *Brown v. Comm'r of Internal Revenue,* 78 T.C. 215, 224 (Tax Ct.1982). In 1924, Congress recognized that "[t]he right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment." *Id.* (quoting H. Rep. 179, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 241, 246; S. Rep. 398, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 266, 272). Congress therefore created the Board of Tax Appeals, which subsequently became the Tax Court, as a forum in which taxpayers could litigate income tax deficiencies "without being required to resort to the cumber-

some and inequitable processes of paying the amount in question and suing for its recovery." *Id.* (quoting *Newsom v. Commissioner,* 22 T.C. 225, 227 (Tax Ct.1954), affd. per curiam, 219 F.2d 444 (5th Cir.1955)); Charles Alan Wright et al., 17 FEDERAL PRACTICE & PROCEDURE § 4102 (3d ed.).

**61.** Opp. to MSJ at 4–5.

**62.** Conrad Decl., Exhs. X, Z, AA, BB, CC, DD, EE, FF.

**63.** Hansen Decl., Docket No. 44–3 (Nov. 13, 2013), Exh. GG.

**64.** Conrad Dec., ¶¶ 30, 32.

2004, and 2005 tax years.[65] Government officials are presumed to carry out their duties in good faith. *Spezzaferro v. F.A.A.,* 807 F.2d 169, 173 (Fed.Cir.1986). This presumption of regularity assumes that government agents have properly discharged their responsibilities. *Hines v. United States,* 658 F.Supp.2d 139, 144 (D.D.C.2009) (noting that the "United States Tax Court regularly presumes the regularity of IRS documents and official actions of the IRS," citing *Roberts v. Comm'r,* T.C. Memo. 2004–100, 2004 WL 759262, *5 (Tax Ct. Apr. 9, 2004); *Mecom v. Comm'r,* 101 T.C. 374, 388–89 (Tax Ct.1993); *Lillis v. Comm'r,* T.C. Memo. 1983–142, 1983 WL 14124, *4 (Tax Ct. Mar. 17, 1983)). To overcome the presumption, taxpayers must come forward with credible evidence. *Lee Brick and Tile Co., Inc. v. United States,* 132 F.R.D. 414, 421 (M.D.N.C.1990).

■ The government has shown an entitlement to the presumption of regularity by proffering the Conrad declaration, which describes the IRS's general procedure concerning issuance of notices of deficiency and assessments, as well as notices of deficiency for all but three of the tax years in question, and certificates of assessment for those three years. The Boyces, by contrast, have adduced no evidence—not even a sworn declaration—controverting the fact that notices of deficiency were mailed to Joel for tax years 2003–

2005. Accordingly, the court deems it uncontroverted that the IRS sent Joel notices of deficiency for each tax year in question at his last known address.[66]

## c. Whether Valid Tax Assessments Were Made

■ "In an action to collect taxes, the government bears the initial burden of proof." *Palmer v. U.S. I.R.S.,* 116 F.3d 1309, 1312 (9th Cir.1997). "The government can usually carry its initial burden, however, merely by introducing its assessment of tax due." *United States v. Stonehill,* 702 F.2d 1288, 1293 (9th Cir.1983); see also *Palmer,* 116 F.3d at 1312 ("The Commissioner's deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation"). The presumption of correctness shifts the burden of proof to the taxpayer to show that the determination is incorrect. See *Rapp v. Commissioner,* 774 F.2d 932, 935 (9th Cir. 1985); *Stonehill,* 702 F.2d at 1293 ("Normally, a presumption of correctness attaches to the assessment, and its introduction establishes a prima facie case").

■ Although the government cannot rely on the presumption of correctness until it offers "some substantive evidence showing that the taxpayer received income" on which taxes were not paid,

**65.** *Id.,* ¶ 33; Pribe Decl., Exh. U.

**66.** The Boyces incorrectly assert that the court has taken judicial notice of the fact that no notices of deficiency exist for the 2003, 2004, and 2005 tax years. (MTD at 6.) They quote Judge McDermott's February 11 order, in which he noted that "the Government states that it cannot locate the deficiency notices for tax years 2003, 2004 and 2005[.]" (Order re: MTC at 1.) Neither Judge McDermott nor this court has taken judicial notice that notices of deficiency for these tax years

do not exist. The Boyces argue in their motion to dismiss that the notices of deficiency and substitutes for return are invalid because they were not produced by individuals with delegated authority. (MTD at 6–13.) The court previously rejected this argument in its May 2 order. (May 2 Order at 11–15). Moreover, because the court has determined that challenges to the validity of these documents do not deprive it of jurisdiction, it need not consider further arguments raised in the Boyces' improperly filed motion.

*Weimerskirch v. Commissioner,* 596 F.2d 358, 360 (9th Cir.1979); see also *Edwards v. Commissioner,* 680 F.2d 1268, 1270 (9th Cir.1982) (per curiam) (holding that a factual foundation for the assessment is laid "once some substantive evidence is introduced demonstrating that the taxpayer received unreported income"), this burden "can be met by presenting federal tax assessments. . . . Certificates of Assessments and Payments ('Form 4340s') are highly probative and in the absence of contrary evidence, are sufficient to establish a tax assessment was properly made and notice and demand for payment were sent." *United States v. Vacante,* 717 F.Supp.2d 992, 1004 (E.D.Cal.2010); see also *Huff v. United States,* 10 F.3d 1440, 1445 (9th Cir.1993) ("Generally, courts have held that IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed . . ."); *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993) ("We stated that Form 4340 is probative evidence in and of itself and, 'in the absence of contrary evidence, [is] sufficient to establish that notices and assessments were properly made,'" quoting *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir. 1992)); *Hughes,* 953 F.2d at 535 ("Official certificates, such as Form 4340, can constitute proof of the fact that the [tax] assessments were actually made"). "If the taxpayer fails to rebut the presumption, the government is entitled to judgment as a matter of law." *Vacante,* 717 F.Supp.2d at 1004.

 The government has established that its assessments are entitled to a presumption of correctness by proffering Forms 4340 that calculate the amount of taxes that Joel owed for the 1998 through 2008 tax years,[67] and the declaration of Philip Conrad, an IRS litigation advisor, who attaches, *inter alia,* the Forms 1099 the government received.[68] Because the government's showing exceeds the minimal factual foundation necessary, the court concludes it is entitled to a presumption that Joel owes the taxes assessed against him. The burden thus shifts to the Boyces to show that the assessments were in error. *See United States v. Lindsey,* No. 11–00664 JMS–KSC, 2013 WL 3947757, *5 (D.Haw. July 30, 2013) (holding that the government's submission of Forms 4340 and a supporting declaration gave rise to a presumption that assessments were correct, and shifted the burden to the defendant to demonstrate any error). Despite filing two opposition briefs and a motion to dismiss, the Boyces have adduced no evidence rebutting the presumption of correctness. Consequently, the court grants summary judgment in the government's favor on its claim to reduce the tax assessments to judgment.

### 2. Whether the Government is Entitled to Foreclose on the Federal Tax Liens

26 U.S.C. § 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."[69]

---

**67.** MSJ, Exh. U, Docket No. 44 (Nov. 13, 2013).

**68.** Conrad Decl., ¶ 7 and Exh. W.

**69.** In addition, 26 U.S.C. § 6322 states: "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so

 "The IRS has broad powers to impose federal tax liens under 26 U.S.C. § 6321.... The Supreme Court has interpreted section 6321 to apply to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee or alter ego." *Fourth Inv. LP v. United States,* 720 F.3d 1058, 1067 (9th Cir.2013) (citing *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350–51, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977)); *see United States v. Capriotti,* No. 1:11–cv–00847 SAB, 2013 WL 1563214, *27 (E.D.Cal. Apr. 12, 2013). "While state law determines the property rights and interests, 'state law is inoperative to prevent the attachment of liens created by statute in favor of the United States.'" *Capriotti,* 2013 WL 1563214 at *27 (citing *Drye v. United States,* 528 U.S. 49, 52, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999)).

It is undisputed that title to the Property was held by Perfect at the time the assessments were made. To reach the Property, therefore, the government must demonstrate that Perfect is the Boyces' nominee or alter ego.

### a. Whether Perfect is the Boyces' Nominee

 The government contends the Boyces are the true owners of the Property, and that Perfect merely holds legal title as their nominee.[70] "A nominee is one who holds bare legal title to property for the benefit of another." *Fourth Inv. LP,* 720 F.3d at 1066 (citing *Scoville v. United States,* 250 F.3d 1198, 1202 (8th Cir.2001)). Although California courts have not yet specified the relevant factors in determining whether a person or entity holds title as a nominee, the Ninth Circuit has predicted that the California Supreme Court

would likely adopt the factors used by federal courts. *Id.* at 1068, 1070. Those factors are: "(1) whether inadequate or no consideration was paid by the nominee[ ]; (2) whether the propert[y] [was] placed in the nominee['s] name[ ] in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominees and the transferor; (4) failure to record the conveyances; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property." *Id.* at 1070. "'[C]ourts focus on the totality of the circumstances,' and no single factor is dispositive.'" *Id.* (quoting *Dalton v. C.I.R.,* 682 F.3d 149, 158 (1st Cir.2012)). "Rather, the overarching consideration is 'whether the taxpayer exercised active or substantial control over the property.'" *Id.* (quoting *In re Richards,* 231 B.R. 571, 579 (E.D.Pa.1999)).

 The first factor considers whether the nominee paid inadequate or no consideration. Although the quitclaim deed stated that the transfer was in exchange for "[f]or valuable consideration received," it also stated that the "conveyance is a gift and is exempt pursuant to Ordinance 2585."[71] There is no evidence beyond the statement in the deed as to the amount, if any, of consideration paid. Because the deed also states that the conveyance was a gift, this factor weighs somewhat in favor of the government.

The second factor examines whether the Property was transferred in anticipation of a lawsuit or other liability while the transferor remains in control of the property. This factor too favors the government. Although the record does not reveal the

---

assessed ... is satisfied or becomes unenforceable by reason of lapse of time."

**70.** Complaint, ¶ 54.

**71.** SUF, ¶¶ 69, 70.

precise date the Property was transferred, the quitclaim deed to Perfect was recorded on December 7, 1995. This date closely follows the 1991 through 1993 tax years, during which Joel filed no tax returns and accrued liability for unpaid taxes.[72] In January 1996, just one month after the quitclaim deed was recorded, the IRS issued notices of deficiency to Joel regarding the 1991, 1992, and 1993 tax years;[73] this further suggests the transfer was made in anticipation of "a lawsuit or other liability."

The third factor, which evaluates whether a close relationship exists between the nominee and the transferors, also indicates the existence of a nominee relationship. Joel has repeatedly identified himself as the manager of Perfect in correspondence with government agencies; he has also stated that he holds power of attorney for Perfect.[74] Because Perfect has not registered with the California Secretary of State or the Internal Revenue Service as any form of business entity, there is no evidence concerning other members or officers of Perfect.[75] Thus, the uncontroverted evidence indicates that Joel is the only person associated with Perfect.

The fourth factor weighs against a finding of a nominee relationship, as the quitclaim deed was recorded.[76]

The fifth and sixth factors, which consider whether the transferor retained possession and continued to enjoy the benefits of the transferred property, favor the government, however. Joel identified the Property as his address on a federal tax return he filed in July 1998, more than two and a half years after recording the quitclaim

deed to Perfect.[77] The Boyces continue to receive mail at the Property's address. They also continue to pay costs associated with the Property; gas and electric utilities remain in Joel's name, and he continues to pay the mortgage on the Property.[78] These facts, each of which is uncontroverted, establish that the Boyces remain in possession of the Property. Moreover, there is no evidence that Perfect has interfered with or curtailed in any way their use and enjoyment of the Property.

Because the Boyces have adduced no evidence, there are no triable issues of fact as to any of the relevant factors. As every factor other than the fourth weighs in the government's favor, the court finds, as a matter of law, that Perfect holds title to the Property as the Boyces' nominee. *See Fourth Inv. LP*, 720 F.3d at 1072 (holding that there was a nominee relationship where every factor other than the fourth factor favored the government). Consequently, it is considered the property of Joel Boyce, and the IRS tax liens attach to it.

### b. Whether Perfect is the Boyces' Alter Ego

The government also contends that Perfect is the Boyces' alter ego.[79] "California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would . . .

---

72. *Id.*, ¶¶ 69, 90, 92.

73. *Id.*, ¶ 91.

74. *Id.*, ¶¶ 73, 74; Conrad Decl., Exh. II.

75. *Id.*, ¶¶ 71, 72.

76. *Id.*, ¶ 69.

77. *Id.*, ¶¶ 99, 100.

78. *Id.*, ¶¶ 67, 75, 80, 87, 88; *id.*, Exh. I.

79. Complaint, ¶ 53.

sanction a fraud or promote injustice.'" *In re Schwarzkopf,* 626 F.3d 1032, 1038 (9th Cir.2010) (quoting *Wood v. Elling Corp.,* 20 Cal.3d 353, 365 n. 9, 142 Cal. Rptr. 696, 572 P.2d 755 (1977)). See also *Doe v. Unocal,* 248 F.3d 915, 926 (9th Cir.2001); *Bank of Montreal v. SK Foods, LLC,* 476 B.R. 588, 597 (N.D.Cal.2012) ("To establish a party as the alter ego of a corporation, the applicant must show '(1) that there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow,'" quoting *Automotriz Del Golfo De California v. Resnick,* 47 Cal.2d 792, 796, 306 P.2d 1 (1957)). "Both factors must be found for alter ego liability to be imposed." *Id.* (citing *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 837, 26 Cal. Rptr. 806 (1962)).

■■■■■ When determining whether a corporation is the alter ego of an individual, federal courts must apply the law of the forum state. *S.E.C. v. Hickey,* 322 F.3d 1123, 1128 (9th Cir.2003). In *Postal Instant Press, Inc. v. Kaswa Corporation,* 162 Cal.App.4th 1510, 1518, 77 Cal.Rptr.3d 96 (2008), the California Court of Appeal identified three ways to pierce the corporate veil. As one court within this district has explained:

> "The first and most traditional manner to pierce the corporate veil occurs when a 'shareholder [is] held liable for the debts or conduct of the corporation.' Second, '[s]ome courts recognize the corporate veil may be pierced in reverse so that a corporation may be held liable for the debts or conduct of a shareholder.' Typically, reverse piercing involves a 'corporate insider ... attempting to pierce the corporate veil from within so that the corporate entity and the individ-

ual will be considered one and the same.' This is referred to as '[i]nside reverse piercing.' The third 'sometimes called 'outside' or 'third party' reverse piercing, occurs when a third party outsider seeks to reach corporate assets to satisfy claims against an individual shareholder.'" *Greiling v. Zahoudanis,* No. CV 08–06467 ODW (ANx), 2009 WL 700049, \*2 (C.D.Cal. Mar. 13, 2009) (quoting *Postal Instant Press, Inc.,* 162 Cal.App.4th at 1518, 77 Cal.Rptr.3d 96 (internal citations omitted)).

Because the government seeks to reach assets held by Perfect to satisfy claims against Joel, this case fall squarely in the third category. The *Postal Instant Press* court stated that "outside reverse piercing is a radical and problematic change in standard alter ego law." 162 Cal.App.4th at 1521, 77 Cal.Rptr.3d 96. The *Greiling* court amplified on this, noting:

> "While reverse piercing and the traditional alter ego doctrine have similar goals, the doctrines achieve those goals in a very different manner. 'Traditional piercing of the corporate veil is justified as an equitable remedy when the shareholders have abused the corporate form to evade individual liability, circumvent a statute, or accomplish a wrongful purpose.' Outside reverse piercing does not seek to remedy the misuse of the corporate form to shield the individual shareholder. 'Rather, the issue addressed by outside reverse piercing is the shareholder's transfer of personal assets to the corporation to shield the assets from collection by a creditor of the shareholder. In other words, outside reverse piercing seeks to protect the judgment creditor from the shareholder's fraudulent transfer of assets to the corporation.' While some courts have applied outside reverse piercing, California courts recognize that such a remedy is

'an unacceptable shortcut' because 'conversion and fraudulent conveyance already afford judgment creditors [an adequate remedy].' " 2009 WL 700049 at *3 (quoting *Postal Instant Press, Inc.*, 162 Cal.App.4th at 1521–23, 77 Cal. Rptr.3d 96 (internal citations omitted)). Because the government's alter ego allegation is an outside reverse piercing claim, and California courts disapprove of that doctrine, the court declines to find that Perfect is Joel's alter ego.

### c. Fraudulent Conveyance

The government next asserts that the Boyces' transfer of the Property to Perfect was fraudulent as defined in California's Uniform Fraudulent Transfer Act (UFTA) because "it was made with the actual intent to hinder, delay, or defraud the United States." [80] California Civil Code § 3439.04 provides, in relevant part:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... with actual intent to hinder, delay, or defraud any creditor of the debtor."

CAL. CIV.CODE § 3439.04(a)(1).

■■■■ "Whether there is actual intent to hinder, delay, or defraud under [the] UFTA is a question of fact to be determined by a preponderance of evidence." *Wolkowitz v. Beverly* (*In re Beverly* ), 374 B.R. 221, 235 (9th Cir. BAP 2007) (citations omitted). *See Capriotti*, 2013 WL 1563214 at *21 (citing *Whitehouse v. Six Corp.*, 40 Cal.App.4th 527, 530, 48 Cal. Rptr.2d 600 (1995)). "Once the creditor has shown that the conveyance is presumptively fraudulent, the burden shifts to the party defending the transfer." *Id.* (citing *Whitehouse*, 40 Cal.App.4th at 533, 48 Cal.Rptr.2d 600). "Because a debtor rarely admits to such a transfer, the evidence of intent 'must of necessity consist of inferences drawn from the circumstances surrounding the transaction and the relationship and interests of the parties.' " *In re SCI Real Estate Investments, LLC*, 2:11-bk–15975, 2013 WL 1829648, *4 (C.D.Cal. May 1, 2013) (citing *Neumeyer v. Crown Funding Corp.*, 56 Cal.App.3d 178, 183, 128 Cal.Rptr. 366 (1976)); see *Am. Express Travel Related Services Co., Inc. v. D & A Corp.*, No. CV–F–04–6737 OWW TAG, 2007 WL 3217565, *14 (E.D.Cal. Oct. 29, 2007).

The UFTA identifies eleven "badges of fraud" used to determine fraudulent intent. These include: (1) whether the transfer was to an insider; (2) whether the debtor retained possession or control of the property after the transfer; (3) whether the transfer was disclosed or concealed; (4) whether before the transfer was made, the debtor had been sued or threatened with suit; (5) whether the transfer was of substantially all the debtor's assets; (6) whether the debtor absconded; (7) whether the debtor removed or concealed assets; (8) whether the' value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) whether the debtor transferred the essential assets of a business to a lienholder that then transferred them to an insider of the debtor. *See* CAL. CIV.CODE § 3439.04(b); *In re SCI Real Estate Investments, LLC*, 2013 WL 1829648 at *4; *Acacia Corp. Mgmt., LLC v. United*

---

**80.** Complaint, ¶ 67.

*States,* No. CIV F–07–1129 AWI GSA, 2013 WL 57690, *6 (E.D.Cal. Jan. 4, 2013).

■ "The UFTA list of 'badges of fraud' provides neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent. A trier of fact is entitled to find actual intent based on the evidence in the case, even if no 'badges of fraud' are present." *In re SCI Real Estate Investments, LLC,* 2013 WL 1829648 at *4 (citing *In re Beverly,* 374 B.R. at 236).

■ The government has adduced evidence that the Boyces fraudulently transferred the Property. First, they transferred the Property to Perfect, which the court has determined holds legal title as their nominee; this satisfies the first factor relevant in assessing fraudulent intent. Second, the government has adduced evidence that the Boyces retained possession and control of the Property after the transfer. Specifically, since transferring the Property to Perfect, Joel has identified the Property as his address; the Boyces continue to receive mail at the Property; gas and electric utilities for the Property remain in Joel's name; and he continues to pay the mortgage on the Property. As noted, these facts demonstrate that the Boyces retain possession and control, which satisfies the second factor. Third, there is evidence that the transfer was a gift, which suggests that factor eight weighs in favor of a finding that the transfer was fraudulent. Finally, the transfer

took place during or prior to December 1995, after unpaid taxes were due and owing; in January 1996, the IRS issued notices of deficiency to Joel for the 1991 to 1993 tax years. Given the proximity of these dates, factor ten favors a finding that the transfer was fraudulent. Based on the government's uncontroverted evidence, the court concludes that it has shown that the transfer was presumptively fraudulent; the burden thus shifts to the Boyces to defend the transfer. As the Boyces have adduced no evidence, no triable issues of fact remain, and the court concludes, as a matter of law, that the Boyces' conveyance of the Property to Perfect was fraudulent. *See Mendez v. Keeling,* No. 09cv2261 BEN (WMC), 2011 WL 1431469, *6–7 (S.D.Cal. Apr. 13, 2011) (granting summary judgment where plaintiff adduced evidence as to the first, second, fourth, eighth, and tenth factors, shifting the burden to defendants, and defendants did not proffer evidence showing that triable issues of fact remained). This provides an alternative basis for concluding that IRS tax liens attach to the Property.

### 3. Whether the Court Should Order the Sale of the Property

■ Under 26 U.S.C. § 7403, the government may enforce a lien by commencing an action in the district court, joining all parties with an interest in the property, and obtaining a judicial order directing sale of the property.[81] *See United States*

---

**81.** Section 7403 provides, in relevant part:

"In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of what-

ever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.... All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.... The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all

*v. Rodgers*, 461 U.S. 677, 691–92, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) ("[W]e must read [§ 7403] to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party ·interests through the mechanism of judicial valuation and distribution"). "[I]n order to enforce a lien and collect on justly owed debts, the district court is empowered to order the sale of property to satisfy the tax debt of one tenant, so long as it compensates the non-debtor spouse for his or her interest." *In re Pletz*, 221 F.3d 1114, 1117–18 (9th Cir. 2000) (noting that § 7403 "explicitly allows a lien creditor like the IRS to sell not only a debtor's interest in a property, but the entire property held as a tenancy by the entirety by the debtor and his nondebtor wife").

The government argues that any interest Delynn Boyce has in the Property is also subject to attachment because it is community property.[82] It cites authority for the proposition that there is a presumption in California that all property acquired during marriage is community property, *Napa Valley Bank v. Morgan*, No. Civ. S–90–1355MLS JFM, 1994 WL 720242, *4 (E.D.Cal. Sept. 15, 1994); CAL. FAM.CODE § 760,[83] and that it may reach all community property to satisfy a tax lien against one spouse. CAL. FAM.CODE § 910 ("Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which

spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt"); *Babb v. Schmidt*, 496 F.2d 957, 959 (9th Cir.1974) (government can reach non-debtor spouse's interest in community property to satisfy a tax lien against the other spouse, even if the tax liability accrued prior to the marriage); see also *In re McIntyre*, 222 F.3d 655, 658 (9th Cir.2000) ("[B]y granting creditors recourse against the whole community estate on debts of only one spouse, California law 'implicitly' establishes that spouse's 'interest' in the whole of the community property, at least to a degree sufficient for the IRS to impose tax liens under the Internal Revenue Code").

"This presumption, however, is overcome when a declaration in a deed or other title instrument indicates spouses take title to property as joint tenants." *In re Pavich*, 191 B.R. 838 (Bankr.E.D.Cal. 1996) (citing *In re Rhoads*, 130 B.R. 565, 567 (Bankr.C.D.Cal.1991)). "When spouses take title to property as joint tenants, each holds his or her interest as separate property. Because the joint tenancy interest is separate, a non-debtor spouse is entitled to one-half of the proceeds from the sale of the joint tenancy property." *Id.* (internal citations omitted). *See Estate of Mitchell*, 76 Cal.App.4th 1378, 1385, 91 Cal.Rptr.2d 192 (1999) ("A husband and wife may co-own property as joint tenants, tenants in common, or community property. Property cannot be held both as community property and in either a joint ten-

---

cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403.

**82.** MSJ at 22.

**83.** California Family Code § 760 provides: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

ancy or a tenancy in common at the same time. Accordingly, each spouse's interest in a joint tenancy or a tenancy in common is his or her own separate property").

The Ninth Circuit specifically recognized this rule in *In re Summers*, 332 F.3d 1240 (9th Cir.2003). There, it noted the presumption created by Family Code § 760 that all property acquired by a married person during the marriage is community property, but observed that "[t]he California Court of Appeal ha[d] concluded that this community property presumption is rebuttable.... '[P]roperty which is acquired by a husband and wife by a written instrument in which they are so described is presumed to be community property *unless the instrument specifically states otherwise.*' ... California law [thus] supports the ... conclusion that the community property presumption is rebutted when a married couple acquires property from a third party as joint tenants." *Id.* at 1242–43 (quoting *Orr v. Petersen (Estate of Petersen)*, 28 Cal.App.4th 1742, 1747, 34 Cal. Rptr.2d 449 (1994) (emphasis original)).

▮▮▮▮ Here, Joel and Delynn acquired both their initial one-half interest in the Property and the one-half interest quitclaimed by the Smiths as "husband and wife as joint tenants." [84] This defeats the presumption that the Property is community property, and shifts the burden to the government to adduce evidence that the Boyces actually held the Property as community property. *See Kohn v. Asnani*, No. H035040, 2011 WL 664116, *1 (Cal. App. Feb. 23, 2011) (Unpub. Disp.) ("We conclude that the form of title presumption is controlling in this case and that since Sham and Yashna originally took title to the property as 'husband and wife as joint tenants,' they each owned a one-half separate interest in the property. We therefore conclude that the court erred in finding that the property was community property ...");[85] *Keller v. Askar*, No. B203581, 2009 WL 1464389, *5 (Cal.App. May 27, 2009) ("Here, by grant deed recorded on October 23, 1985, defendants acquired the Property as 'Sarkis Askar and Zouhor Askar, husband and wife, as joint tenants.' Defendants put forth no evidence at trial that Sarkis and Zouhor had an understanding or agreement that the Property, despite the form of title, was actually community property. Thus, defendants failed to carry their burden of rebutting the form of title presumption and the trial court properly concluded that they held the Property as joint tenants"). The government has adduced no evidence that Joel and Delynn Boyce took title to the Property as other than joint tenants. Thus, it has failed to carry its burden of showing that the Boyces actually held the Property as community property.[86]

---

84. MSJ, Exhs. A, D.

85. "Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05–313 VRW, 2005 WL 2893865, *3 (N.D.Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

86. Although California Family Code § 2581 creates a presumption that property acquired during a marriage in joint tenancy is community property, this presumption applies only "for the purpose of property on dissolution of marriage or legal separation of the parties[.]" CAL. FAM.CODE § 2581; see also 11 B. Witkin, SUMMARY OF CALIFORNIA LAW (10th ed.2005), § 220(2) ("[T]he presumption found in Family Code section 2581 only applies 'for purposes of a property division upon marriage dissolution or legal separation' "); *Dorn v. Solomon*, 57 Cal.App.4th 650, 652, 67 Cal.Rptr.2d 311 (1997) ("[T]the presumption found in Family Code section 2581 only applies 'for purposes

At oral argument, the government asserted that, subject to prior liens, it was entitled to the entire proceeds of the sale of the property because Delynn Boyce transferred her one-half interest in the Property to Perfect. The government argued that the transfer was binding on Delynn Boyce, and operated to terminate the joint tenancy.

Because the transfer was a fraudulent conveyance, it is binding on Delynn Boyce even though it does not bind the government. *Abbey v. Zimmerman,* 12 Cal. App.2d 311, 318–19, 55 P.2d 903 (1936) ("A grant made in fraud of creditors is valid between the parties and to all the world except as to the creditors of the grantor. The grantee takes whatever interest the grantor had qualified only by the interest of the creditors and after their claims are satisfied is usually entitled to any surplus remaining"); *Patterson v. Missler,* 238 Cal.App.2d 759, 770, 48 Cal.Rptr. 215 (1965) ("A judgment in favor of a creditor, in a fraudulent conveyance action such as the one at bench, sets aside the conveyance insofar as it affects the creditor, but does not set it aside as to the grantor; as between the creditor and the grantee the conveyance is ineffective; but as between the grantor and the grantee the conveyance remains in full effect").

■ There are many ways to terminate a joint tenancy, including "an act which was clearly indicative of an intent to terminate." *Tenhet v. Boswell,* 18 Cal.3d 150, 158, 133 Cal.Rptr. 10, 554 P.2d 330 (1976). The termination of a joint tenancy, however, does not necessarily transform separate property into community property; rather, it merely converts a joint tenancy into a tenancy in common, thereby extinguishing the right of surviv-

orship feature of the joint tenancy. D. Greenwald & S. Bank, 12A CAL. PRAC. GUIDE: REAL PROPERTY TRANSACTIONS § 12:5.1 (Rutter Group 2014) ("A joint tenancy may be severed (as to all joint tenants or as to any single joint tenant's interest) by agreement of the parties, by written declaration or by conveyance with or without the other joint tenants' joinder or consent. A severance extinguishes the right of survivorship feature and the co-owners thereafter hold the property as tenants in common"). Thus, even assuming the transfer to Perfect extinguished the Boyces' joint tenancy, it did not alone operate to transform Delynn Boyce's separate property interest into community property.

Spouses may change the status of property through transmutation, however. *In re Marriage of Campbell,* 74 Cal.App.4th 1058, 1062, 88 Cal.Rptr.2d 580 (1999) ("Both before and during marriage, spouses may agree to change the status of any or all of their property through a property transmutation. A transmutation is an interspousal transaction or agreement that works a change in the character of the property"). "In order for a transmutation of property to occur, statutory formalities must be met." *Id.* "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." CAL. FAM.CODE § 852(a). This provision "precludes the admission of extrinsic evidence to prove an oral transmutation of property between spouses." *In re Marriage of Campbell,* 74 Cal.App.4th at 1065, 88 Cal.Rptr.2d 580. *See In re Marriage of Rossin,* 172 Cal.App.4th 725, 734, 91 Cal.

of a property division upon marriage dissolution or legal separation' "). As this case involves neither a dissolution of the Boyces'

marriage nor their legal separation, the presumption created by § 2581 does not apply.

Rptr.3d 427 (2009) ("Because an agreement is required to transmute the character of property, the use of separate property during marriage—without more—does not convert it into community property"); see also *In re Marriage of Mix*, 14 Cal.3d 604, 611, 122 Cal.Rptr. 79, 536 P.2d 479 (1975) ("[M]ere commingling of separate with community funds in a bank account does not destroy the character of the former if the amount thereof can be ascertained").

■ Here, the transfer to Perfect was not an "express declaration" that converted Delynn Boyce's separate property interest into community property. Nor is there any evidence of an agreement between the Boyces to convert her interest to community property. Accordingly, the court is unable to conclude that the transfer of Delynn Boyce's one-half interest in the Property to Perfect operated to convert her interest to community property, such that it is available to satisfy Joel Boyce's debts.

The government has identified no other theory, and cited no authority, for the proposition that the transfer of Delynn Boyce's interest in the Property to a third party permits it to seize that interest to satisfy liens arising from Joel Boyce's unpaid taxes. Accordingly, although the court can order a sale of the Property under § 7043, Perfect must be reimbursed for one-half of the proceeds.[87]

As respects the remaining defendants, the government has adduced evidence that Chase's lien is senior to all others.[88] The FTB and Bank of America have stipulated to the priority of their respective interests,[89] the Ventura County tax collector

---

**87.** The record does not indicate whether the Boyces have an interest in Perfect, or, if they do, the nature or extent of that interest. While it is possible that the government's lien attached to any interest Joel Boyce holds in the company, it has not adduced evidence that would permit the court so to conclude, and thus to authorize the government to seize all or some portion of the proceeds of the sale that must be paid to Perfect.

**88.** The government proffers a table listing the order of the lien claimants' priority. (SUF, ¶ 101.) The table indicates that Chase has the senior interest. (*Id.*) The government cites Chase's Answer as evidence supporting its first priority position. In its answer, Chase responded to paragraph 64, which listed the priority of the parties' respective interests, and identified Chase as having the first priority in the following manner: "Chase admits that it may claim an interest in the subject real property. Chase lacks adequate information to admit or deny the remaining allegations of paragraph 64 of the Complaint, and on that basis denies them." (Answer, ¶ 50.) Because Chase denied paragraph 64, that paragraph is not an admission of fact that the court can consider evidence in deciding the government's motion. *Evans v. Daniel*, 289 F. 335, 337 (9th Cir.1923) ("[P]leadings in a cause containing admissions of facts dispense with the necessity of proving the facts admitted"). Chase states as an affirmative defense that its interest is senior to the government's; an affirmative defense, however, is not evidence. *Kemp v. Grippen*, No. 06–C–0077, 2007 WL 870122, *5 (E.D.Wis. Mar. 20, 2007) ("Although the answer includes an affirmative defense regarding the lack of an administrative claim, the affirmative defense is not evidence on which this court can rely"). Nonetheless, the government has adduced evidence demonstrating the priority of Chase's interest. Specifically, it has proffered a $184,500 mortgage loan between Great Western Bank and the Smiths and Boyces, executed October 10, 1988. (Declaration of Andrew T. Pribe, Docket No. 44–2 (Nov. 13, 2013), Exh. B). It has also proffered a deed of trust executed October 11, 1988, and recorded October 14, 1988, which secured the loan with the property, and identified the Smiths and Boyces as trustors and Great Western Bank as beneficiary. (MSJ, Exh. C.) Chase now holds Western Bank's interest in the Property. (SUF, ¶ 67.) Because the loan predates all other interests at issue, the court determines that Chase has the first priority.

**89.** FTB and BofA Stip.

and the government have stipulated to the priority of their respective interests,[90] and the City of Thousand Oaks has disclaimed any interest in the Property and been dismissed.[91] Although each stipulation establishes the priority of the respective interests of the parties thereto, no single stipulation establishes the priority of all of the liens. Because the government has not adduced evidence that establishes the priority of all of the remaining liens, the court is presently unable to enter summary judgment concerning that issue.

## III. CONCLUSION

For the reasons stated, the government's motion for summary judgment is granted. The court will order that (1) Joel Boyce's federal income tax liabilities and associated penalties and interest be reduced to judgment; (2) that the federal tax liens against the Property be foreclosed; and (3) that the Property be sold. The court will also order that the transfer of the Property to Perfect be set aside as fraudulent. Although it determines that Chase's lien has first priority position, the court cannot presently determine the priority of the remaining liens. It therefore directs the government to submit a single stipulation among it, the FTB, Bank of America, and the Ventura County Tax Collector that sets forth the priority of the remaining liens. This stipulation, together with an accompanying judgment, should be submitted no later than **July 21, 2014.**